NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4453-14T3

MARY T. KLEINE,

     Plaintiff-Appellant,

  v.

EMERITUS AT EMERSON, BREA EMERSON,
LLC d/b/a EMERITUS AT EMERSON,
and EMERITUS CORPORATION,

     Defendants,

  and

CARE ONE AT VALLEY, CARE ONE,
LLC, MILLENNIUM HEALTH CARE
CENTERS II, d/b/a CARE ONE
AT VALLEY, DES HOLDING CO.,
INC. and DES-C 2009 GRAT,

     Defendants-Respondents.

| APPROVED FOR PUBLICATION |
| :---: |
| June 9, 2016 |
| APPELLATE DIVISION |

_____

Argued March 15, 2016 — Decided June 9, 2016

Before Judges Fisher, Rothstadt and Currier.

On appeal from the Superior Court of New
Jersey, Law Division, Bergen County, Docket
No. L-409-13.

Thomas S. Howard argued the cause for
appellant (Gartenberg Howard, LLP, attorneys;
Mr. Howard and Peter A. Tabisz, on the
briefs).

Shane P. Simon argued the cause for
respondents (Buchanan Ingersoll & Rooney,
P.C., attorneys; David L. Gordon, Eric D.

Heicklen and Mr. Simon, of counsel and on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

Plaintiff commenced this personal injury action against, among others, defendant Care One at Valley,[1] which operates a nursing facility that moved to compel arbitration of plaintiff's claims based on a clause contained in plaintiff's admission agreement. Defendant apparently imposes on its patients an obligation to arbitrate disputes because it can. The Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-16, which the Supreme Court of the United States broadly construes in favor of arbitration, overrides all state policies and concerns, including the Nursing Home Act's[2] express prohibition against the enforcement of such agreements, N.J.S.A. 30:13-8.1.[3] See Marmet

---

[1] Plaintiff actually named a number of defendants as being responsible for this aspect of her personal injury claims, namely: defendants Care One, LLC, Millennium Health Care Centers II, d/b/a Care One at Valley, DES Holding Co., Inc., and DES-C 2009 GRAT (collectively, defendant).

[2] N.J.S.A. 30:13-1 to -17.

[3] N.J.S.A. 30:13-8.1 declares that "[a]ny provision or clause waiving or limiting the right to sue for negligence or malpractice in any admission agreement or contract between a patient and a nursing home or assisted living facility . . . whether executed prior to, on or after [January 12, 2002,] the effective date of this act, is hereby declared to be void as

(continued)

Health Care Ctr., Inc. v. Brown, 565 <u>U.S.</u> __, __, 132 <u>S. Ct.</u> 1201, 1203, 182 <u>L. Ed.</u> 2d 42, 45 (2012) (holding that West Virginia's similar nursing home statute, which prohibits arbitration of personal injury and wrongful death suits, takes a backseat to the FAA and the federal policy in favor of arbitration); <u>see also</u> <u>Estate of Ruszala v. Brookdale Living Communities, Inc.</u>, 415 <u>N.J. Super.</u> 272, 292-93 (App. Div. 2010).[4]

Despite its broad interpretation of the FAA and its supremacy over specific state policies and practices,[5] the Supreme Court has recognized the "fundamental principle that

---

(continued)
against public policy and wholly unenforceable, and shall not constitute a defense in any action, suit or proceeding."

[4] We must comply with <u>Marmet</u>, but we are not required to agree. <u>See</u> <u>Reinauer Realty Corp. v. Borough of Paramus</u>, 34 <u>N.J.</u> 406, 415 (1961); <u>Crespo v. Crespo</u>, 408 <u>N.J. Super.</u> 25, 37 (App. Div. 2009), <u>aff'd o.b.</u>, 201 <u>N.J.</u> 207 (2010). Although we willingly embrace the concept of federal supremacy, we find it distressing that invocation of the "liberal federal policy favoring arbitration," <u>see</u> <u>Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.</u>, 460 <u>U.S.</u> 1, 24, 103 <u>S. Ct.</u> 927, 941, 74 <u>L. Ed.</u> 2d 765, 785 (1983), in many cases has caused the forfeiture of important rights because consumers and employees lack the bargaining power to object to an arbitration clause's inclusion; citation of the "liberal federal policy favoring arbitration" merely evokes the old saying, "a good catchphrase can obscure fifty years of analysis."

[5] In recognizing that the Nursing Home Act's sensible bar on compelled arbitration must give way to the FAA's long reach, we see no impediment to the indirect enforcement of the policies embedded in <u>N.J.S.A.</u> 30:13-8.1 through the state's licensing power over such facilities.

arbitration is a matter of contract," Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 130 S. Ct. 2772, 2776, 177 L. Ed. 2d 403, 410 (2010), thereby permitting application of state contract law to ascertain whether the parties had a meeting of the minds when contracting, and whether a party, who has ostensibly agreed to waive the right to trial by jury, has clearly and unambiguously consented to arbitration, Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442, 444 (2014), cert. denied, __ U.S. __, 135 S. Ct. 2804, 192 L. Ed. 2d 847 (2015). In light of these principles, we turn to the specific facts of this case.

Because the trial judge summarily granted defendant's motion to compel arbitration and because our review of that determination is de novo, we assume as true the factual opposition presented by plaintiff in response to defendant's motion. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). In opposition to the motion, Frank J. McMahon asserted his then eighty-five-year-old sister, plaintiff Mary T. Kleine, was "still suffering from the consequences of the trauma she had endured" at a nursing facility operated by the other

defendants,[6] when, through a power of attorney, he sought her admission at defendant's facility. An individual in the admissions office presented him with "a stack of papers, of which the admission agreement was one of several" documents, and he was told "to sign and initial wherever indicated." McMahon was then "left alone to do so, without any further explanations or instructions."

McMahon further asserted:

> No one told me, and I did not notice, that the agreement contained a waiver of my sister's civil rights, including her right to a jury trial and her right to appeal any adverse decision to an appellate court. I also was not told that my sister would have to pay for one-half the cost of the arbitration. In fact, the admission person said nothing to me about the contents of the agreement, except that I had to sign it for my sister, and that I had to sign it right away because my sister was being admitted to that nursing home.

> No one told me that I had a right to consult with counsel before signing or that my sister's admission to the facility was not contingent upon my signing the agreement. If I had understood that such a provision was contained in the admission agreement, I would have asked for an explanation so I could understand what this provision meant. If I had been told that by signing I would not only give up her right to a jury trial, but also would waive her right to appeal

---

[6] Defendants Emeritus At Emerson, Brea Emerson, LLC d/b/a Emeritus at Emerison, and Emeritus Corporation (collectively, Emerson).

from any decision, and that she would have to pay for one-half the cost of any proceeding to determine whether Care One was negligent or caused her injury, I would certainly have asked whether I was required to agree as a condition of her admission, and I would probably have spoken with an attorney to fully understand the effect of this agreement.

. . . .

My sister's finances are very limited. She is currently paying the cost of the Allendale Nursing Home (about $5,000 per month) from the proceeds of the sale of her house in 2010, which funds should last her another two years or so, so long as she does not have any large unanticipated expenses. Her only income is the $1,191 she receives from Social Security. When her savings are expended, she will have to apply for Medicaid coverage.

My understanding is that qualified arbitrators charge $400-500 or more per hour for their services. If our case required 4-5 seven hour days to present all the testimony and documentary evidence, plus another day for the arguments of counsel and the arbitrator's consideration of the evidence, the arbitrator's fees would range from $14,000 — 18,000 and maybe more if more hearing days are needed or the arbitrator was more expensive, which means my sister would have to pay $7,000 — 9,000 or more, plus the cost of a transcript if we want to obtain one, all with her limited resources. Consequently, my sister could only afford to pay for an arbitrator to hear the case if she sacrificed her ability to pay for her continued life at the assisted living facility. I do not believe that is a choice she should have to make — and I would not have signed the admission agreement as worded if I had been told that she would

6

have to pay that amount of money in order to have her claims heard.

The trial judge was required to assume the truth of these sworn statements and assume there was no meeting of the minds about the arbitration of disputes.

Defendant's arbitration clause provided in upper case and bold lettering:

> Any controversy or claim arising out of or relating to this agreement and brought by the resident, his/her personal representatives, heirs, attorneys or the responsible party shall be submitted to binding arbitration by a single arbitrator selected and administered pursuant to the commercial arbitration rules of the American Arbitration Association. . . .[7] Any claimant contemplated by this paragraph hereby waives any and all rights to bring any such claim or controversy in any manner not expressly set forth in this paragraph, including, but not limited to, the right to a jury trial.[8]

---

[7] We have omitted a sentence that describes the impact of applicable statutes of limitations because of its lack of relevance here.

[8] The contract's next separate provision, also in upper case and bold lettering, states: "This agreement is a binding legal document. The resident has read and understands the agreement and acknowledges that, if so desired, the resident and/or [sic] responsible party has been given the opportunity to consult with legal counsel." It is difficult to imagine an infirm individual, or his or her family member, is likely to delay admission while taking the time to seek a legal opinion about the contract. Our Legislature likely appreciated these realities — to which the "liberal federal policy favoring arbitration" is blind — when enacting N.J.S.A. 30:13-8.1.

It is well-established that the party from whom an arbitration clause has been extracted must "clearly and unambiguously" agree to a waiver of the right to sue. Atalese, supra, 219 N.J. at 443; see also Morgan v. Raymours Furniture Co., 443 N.J. Super. 338, 343 (App. Div. 2016), certif. denied, __ N.J. __ (Apr. 25, 2016). We agree the arbitration clause unambiguously declares the resident's waiver of the right to pursue a claim in any fashion other than as set forth, but other aspects of the clause suggest it may be unconscionable.

For example, it is only the resident or the resident's representative who is asked to waive the right to seek redress in the courts; the clause's insistence on the utilization of arbitration applies to "any controversy or claim arising out of or relating to this agreement and brought by the resident [or the resident's representatives[9]]" (emphasis added). If the use of the word "and" were not sufficient to demonstrate the promise to arbitrate was made only by the resident or her representatives, certainly the clause's last sentence, which describes the waiver of the right to pursue the claim or controversy in some manner other than arbitration, is expressed only by "any claimant contemplated by this paragraph," i.e., the resident or her

---

[9] These representatives are identified as "his/her personal representatives, heirs, attorneys or the responsible party."

representatives. In short, only the plaintiff was bound; defendant made no such promise, retaining for itself not only the right to sue the resident or her representatives in any court of competent jurisdiction but also the right to have its own claims resolved by trial by jury.

As observed earlier, arbitrability was decided summarily. At that stage, the judge was required to assume the truth of McMahon's sworn statements and consider the language of the agreement in the light most favorable to plaintiff. Brill, supra, 142 N.J. at 540. Had the judge done so, the one-sided waiver extracted by defendant, as well as an assumption of the truth of McMahon's assertions about the manner in which the contract was formed, would have required an evidentiary hearing related to unconscionability. See, Muhammad v. Cnty. Bank of Rehoboth Beach, 189 N.J. 1, 15 (2006), cert. denied, 549 U.S. 1338, 127 S. Ct. 2032, 167 L. Ed. 2d 763 (2007). If that was all that was before us, we would remand for such an evidentiary hearing and the judge's consideration of both procedural and substantive unconscionability factors related to the contract. See Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 564-66 (Ch. Div. 2002) (recognizing that procedural unconscionability includes consideration of "a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex

contract terms, bargaining tactics, and the particular setting existing during the contract formation process," and substantive unconscionability involves consideration of harsh or unfair one-sided terms embedded in the contract). The application of our common law unconscionability principles in this fashion would not create an obstacle inconsistent with FAA principles. See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339-40, 131 S. Ct. 1740, 1746, 179 L. Ed. 2d 742, 751 (2011).

But we reverse because the arbitration process contemplated by the clause in question was not available when the parties executed their contract. In opposing the motion to compel arbitration, plaintiff provided a certification, which authenticated an attached AAA statement that unequivocally expressed that, as of January 1, 2003, AAA would "no longer accept the administration of cases involving individual patients without a post-dispute agreement to arbitrate." Consequently, when the parties contracted, their exclusive forum for arbitration was no longer available; there being no agreement to arbitrate in any other forum, arbitration could not be compelled. In short, even assuming the clause was otherwise enforceable and consented to by plaintiff, there was no meeting

of the minds as to an arbitral forum if AAA was not available.[10]

As Atalese instructs, the party from whom such a provision has been extracted must be able to understand — from clear and unambiguous language — both the rights that have been waived and the rights that have taken their place. See Atalese, supra, 219 N.J. at 444; see also Khan v. Dell, Inc., 669 F.3d 350, 357-59 (3rd Cir. 2012) (Sloviter, J., dissenting). Because AAA was not available to administer the arbitration of this dispute at the time the contract was formed, or even at the time the trial court ruled on the application,[11] the judge mistakenly compelled

---

[10] We are mindful defendant has argued the clause does not require AAA arbitration, only that the arbitration be administered pursuant to AAA's commercial arbitration rules; in other words, defendant contends that the provision does not limit the appointment of a substitute administrator so long as that administrator applies AAA's commercial arbitration rules. It is difficult to conclude that a reasonable reader of this language — particularly one simultaneously contemplating the placement of an elderly sister in a nursing home — would make that fine distinction even if defendant's interpretation was plausible. Moreover, the forfeiture of legal rights and the compelling of arbitration over objection is not a three-card monte game. Atalese requires greater clarity and less ambiguity in determining whether and how to enforce such a clause. We reject the notion that a court must adopt defendant's strained interpretation of the clause it alone drafted.

[11] In its appendix, defendant provided a document purporting to represent AAA's current position, which, if true, would suggest AAA has a new-found willingness to administer such disputes. The document is undated and was not appended to a statement swearing to its authenticity or identifying when this alleged change in policy occurred. We, accordingly, give this item no
(continued)

A-4453-14T3

arbitration of plaintiff's personal injury claims against this defendant.[12]

The April 21, 2015 order compelling arbitration is reversed.[13]

---

(continued)
consideration in concluding that arbitration could not be compelled because the parties' exclusive forum was unavailable.

[12] Compelling arbitration provides further complications. Plaintiff alleges two separate acts of negligence against two groups of defendants. Because of personal injuries allegedly suffered in Emeritus's facility, plaintiff moved to defendant's facility; she claims she was later injured as a result of defendant's negligence. Although both facilities extracted arbitration clauses when admitting plaintiff — we can only wonder whether this is the industry standard despite what N.J.S.A. 30:13-8.1 prohibits — in earlier proceedings a different judge denied arbitration of plaintiff's claims against Emeritus because Emeritus's provision required arbitration administered by the National Arbitration Forum, which also does not offer its services for any claim arising out of "any aspect of healthcare." If the arbitration clause in question in this appeal were to be enforced, plaintiff would be relegated to two different fora and face the possibility of inconsistent results; both those circumstances are inconsistent with New Jersey policies and any modern thought on litigation and, indeed, would run counter to the reasons that originally triggered our state policy in favor of arbitration — the providing of "a speedy, inexpensive, expeditious and perhaps less formal manner" disposition of claims. See Carpenter v. Bloomer, 54 N.J. Super. 157, 162 (App. Div. 1959).

[13] The motion judge never appointed a replacement of the unavailable arbitral forum and never described what the parties were to do next. The order merely "directed" plaintiff "to arbitrate" with defendant and "dismissed" the "matter" from "th[e] [c]ourt's jurisdiction." Even if the judge correctly ruled, the claims against defendant should only have been stayed, not dismissed. See N.J.S.A. 2A:23B-7(g).

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

13