**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3640-18T3

ESTATE OF MAUREEN BRIGHT,
through CHARMAINE BRIGHT,
Administrator,

      Plaintiff-Respondent,

v.

ARISTACARE AT CHERRY HILL,
LLC, d/b/a ARISTACARE AT
CHERRY HILL,

      Defendant-Appellant.

_____

Argued February 5, 2020 – Decided February 26, 2020

Before Judges Fuentes, Haas and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1607-18.

Jessica L. Smith (Mauro Lilling Naparty, LLP) of the New York bar, admitted pro hac vice, argued the cause for appellant (Marks, O'Neill, O'Brien, Doherty & Kelly, PC, and Mauro Lilling Naparty, LLP, attorneys; Caryn L. Lilling, on the briefs).

Jonathan Lauri argued the cause for respondent (Stark & Stark, PC, attorneys; Denise M. Mariani and Jonathan Lauri, on the brief).

PER CURIAM

Defendant Aristacare at Cherry Hill, LLC, d/b/a Aristacare at Cherry Hill (Aristacare) appeals from the February 1, 2019 order denying its motion to dismiss plaintiff Estate of Maureen Bright's (the estate's) complaint and compel arbitration. We affirm.

The facts of this matter are not in dispute. On April 21, 2016, Maureen Bright was discharged from the hospital to Aristacare after undergoing a second leg amputation. Maureen arrived at Aristacare in the early afternoon accompanied by her daughter, Charmaine Bright.[1] Charmaine was not Maureen's guardian and did not hold any power of attorney concerning Maureen's affairs.

Charmaine certified that upon admission, Maureen "was on several medications to treat pain, depression, anxiety, and other medical conditions." During the admission process, Charmaine and Maureen were both "emotionally upset." An Aristacare nurse told Charmaine that Maureen "was not aware of

---

[1] Because Maureen and Charmaine share the same surname, we refer to them by their first names to avoid confusion. We intend no disrespect by doing so.

A-3640-18T3

where she was; and that [her] mother was not aware of time." The nurse also stated that Maureen "was confused" and "was having hallucinations."

The next day, Charmaine went to visit her mother and, upon arriving at the facility, a receptionist told her that an Aristacare social worker had "left paperwork for [her] to sign so that [Maureen] could be admitted into" the facility. Shortly thereafter, the receptionist handed Charmaine a "stack" of documents and told Charmaine to sign and return them. A letter on the top of the pile of papers advised Charmaine to "take a few minutes to review and sign where the tabs are and return to the receptionist."

The admission documents consisted of at least two dozen pages, with a section labeled "Arbitration" appearing on page ten of one of the documents. This provision stated:

> EXCEPT FOR ANY CLAIM OR DISPUTE ARISING IN CONNECTION WITH FACILITY'S EFFORTS TO COLLECT MONIES DUE FROM RESIDENT AS A RESULT OF RESIDENT'S NON-PAYMENT AND/OR RESIDENT'S (OR ANY RESPONSIBLE PATY'S [SIC]) FAILURE TO COOPERATE WITH FACILITY IN SECURING PAYMENT FROM A THIRD PARTY PAYOR SOURCE, WHICH THE PARTIES AGREE MAY BE HEARD BY A COURT OF COMPETENT JURISDICTION IN THE CITY OR COUNTY WHERE THE FACILITY IS LOCATED, ANY CLAIM OR DISPUTE BETWEEN THE PARTIES, WHETHER IN CONTRACT, TORT, STATUTE OR OTHERWISE (INCLUDING THE

SCOPE AND INTERPRETATION OF THIS CLAUSE, AND THE ARBITRABILITY OF THE CLAIM OR DISPUTE), BETWEEN THE RESIDENT/RESPONSIBLE PARTY AND THE FACILITY OR ITS EMPLOYEES, AGENTS, SUCCESSORS OR ASSIGNS, AND RELATED OR AFFILIATED PARTIES, IF ANY, WHICH ARISE OUT OF OR RELATE TO THIS AGREEMENT FOR RESIDENT'S CARE AT THE FACILITY OR ANY RELATED OR RESULTING AGREEMENT, TRANSACTION OR RELATIONSHIP (INCLUDING ANY SUCH RELATIONSHIP WITH "RESPONSIBLE PARTIES" OR ANY OTHER PARTY WHO IS NOT A SIGNATORY TO THIS AGREEMENT) SHALL BE DECIDED EXCLUSIVELY BY MANDATORY, FINAL, BINDING ARBITRATION AND NOT IN COURT OR BY JURY TRIAL, PROVIDED THAT, RESIDENT/RESPONSIBLE PARTY SHALL NOT BE ENTITLED TO AN AWARD OF EXEMPLARY OR PUNITIVE DAMAGES. RESIDENT AND/OR RESPONSIBLE PARTY UNDERSTANDS THAT DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT AND OTHER RIGHTS THAT A PARTY WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis, and not as a class action, and according to the rules of the American Arbitration Association. Any such arbitration must be requested in writing within one (1) year from the date the party initiating the arbitration knew or should have known about the claim or dispute, and all claims arising from any dispute for which a timely request for arbitration has not been made are forever waived. If a court of competent jurisdiction determines that any clause or provision of this section

4

is invalid or unenforceable, then the invalidity or unenforceability of that clause or provision of this section shall not affect the validity or enforceability of any other clause or provision of this section which shall remain in full force and effect. The various covenants and provisions of this section in particular and this Agreement as a whole are intended to be severable and to constitute independent and distinct binding obligations.

To put it bluntly, this arbitration provision posed a number of problems. Among other things, the first sentence is over two hundred words in length, making it difficult, if not impossible to follow. While the provision purports to bar the patient from seeking redress in court, the same prohibition does not apply to Aristacare, which remains free to bring collection actions outside the auspices of an arbitration process. The provision also improperly bars the patient from seeking punitive damages, which renders that portion of it unconscionable. Estate of Anna Ruszala ex. re. Mizerak v. Brookdale Living Cmtys., Inc., 415 N.J. Super. 272, 299 (App. Div. 2010).

Perhaps most egregiously, the provision states that arbitration will be conducted "according to the rules of the American Arbitration Association" (AAA). In 2003, however, the AAA stopped conducting arbitrations in nursing home cases involving disputes "between individual patients and healthcare service providers that relate to medical services, such as negligence . . . unless

5

all parties agreed to submit the matter to arbitration after the dispute arose." Therefore, the AAA has no rules governing arbitrations involving nursing home patients. Aristacare did not specify what alternative rules might be applied and did not attach a copy of the rules to the admission document.

As noted above, Charmaine did not have a power of attorney for Maureen. Nevertheless, the receptionist instructed her to sign the forms. Charmaine signed the documents where the tabs indicated a signature was needed, including the page where the arbitration provision appeared.[2] No one from Aristacare reviewed the documents with Charmaine, or told her she could have an attorney examine the package of papers before she signed them. Maureen did not sign any of the documents in Charmaine's presence.

After signing the papers, Charmaine looked for the receptionist, but she was not there. Therefore, Charmaine returned the forms the next day when she visited her mother.

Maureen died in August 2016 while still residing at Aristacare. On October 26, 2016, her estate's attorney sent three letters to Aristacare advising that the estate had retained counsel "for injuries arising out of a nursing home negligence matter." The letters asked Aristacare to provide its insurance

---

[2] Charmaine did not date that page.

information and to preserve evidence related to the claim. Aristacare did not respond to this correspondence.

On April 30, 2018, the estate filed its complaint in the Law Division against Aristacare, asserting that the facility was negligent and provided inadequate care to Maureen. Aristacare filed its answer on August 2, 2018.

In September 2018, Aristacare gave the estate a copy of the admission documents, including the arbitration provision described above. For the first time, Charmaine saw her mother's signature on the form, above where she had signed it. The document does not set forth the date on which Maureen signed the form, and Aristacare has never provided any information describing how Maureen's signature came to be placed on the document.

Aristacare thereafter filed a motion to compel arbitration.[3] After oral argument, the trial judge determined that the arbitration agreement could not be enforced because Aristacare had not carried its burden of showing there was a

---

[3] The estate did not file a timely response to this motion and, as a result, the trial court granted it as unopposed. The estate promptly filed a motion to reopen the matter, asserting that its attorney's office had made an error in calendaring the motion and, as a result, failed to file its answering papers. The court granted this motion, and permitted the estate to submit a response. Aristacare challenges the court's decision on appeal. Having considered Aristacare's arguments, we conclude that its contention on this point lacks sufficient merit to warrant further discussion in this opinion. R. 2:11-3(e)(1)(E).

meeting of the minds between the parties to the arbitration provision. In his oral decision, the judge found that Charmaine and her mother were both emotionally upset when Charmaine was presented with the agreement. The judge noted that the arbitration clause was vague and referred to AAA rules which were no longer in effect. The judge also found that the arbitration clause provided that "arbitration must be requested in writing within one (1) year from the date the party initiating the arbitration knew or should have known about the claim or dispute[.]" Here, the estate sent three letters to Aristacare advising it of a potential claim in October 2016, but Aristacare did not seek to move the matter to arbitration until October 2018. Thus, the judge concluded that Aristacare's request for arbitration was untimely. This appeal followed.

On appeal, Aristacare contends that the judge erred by declining to enforce the arbitration provision contained in the admission documents presented to Charmaine. We disagree.

We exercise de novo review of a trial court's decision on the enforceability of an arbitration clause. Krenahan v. Home Warranty Adm'r of Florida, Inc., 236 N.J. 301, 316 (2019). "Whether a contractual arbitration provision is enforceable is a question of law, and we need not defer to the interpretative

analysis of the trial . . . court[] unless we find it persuasive." <u>Ibid.</u> (citing <u>Morgan v. Sanford Brown Inst</u>., 225 N.J. 289, 302-03 (2016)).

"The Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1-16, which the Supreme Court of the United States broadly construes in favor of arbitration, overrides all state policies and concerns, including the Nursing Home Act's express prohibition against the enforcement of such agreements, N.J.S.A. 30:13-8.1." <u>Kleine v. Emeritus at Emerson</u>, 445 N.J. Super. 545, 547 (App. Div. 2016) (footnotes omitted). However, because arbitration is a matter of contract, state contract law applies "to ascertain whether the parties had a meeting of the minds when contracting, and whether a party, who has ostensibly agreed to waive the right to trial by jury, has clearly and unambiguously consented to arbitration." <u>Id.</u> at 548 (citing <u>Atalese v. U.S. Legal Servs. Grp., L.P.</u>, 219 N.J. 430, 442 (2014)).

"New Jersey law governing the enforceability of arbitration is well settled. Like any contract, the parties must reach such an agreement by mutual assent." <u>Flanzman v. Jenny Craig, Inc.</u>, 456 N.J. Super. 613, 621 (App. Div. 2018) (citing <u>Atalese</u>, 219 N.J. at 442). Thus, for an agreement to be enforceable there must be a "meeting of the minds." <u>Ibid.</u> (citing <u>Atalese</u>, 219 N.J. at 442). "The party from whom an arbitration clause has been extracted, must 'clearly and

unambiguously' agree to waive his or her statutory rights." Ibid. (citing Atalese, 219 N.J. at 443). "[C]ontractual language alleged to constitute a waiver [of statutory rights] will not be read expansively." Ibid. (alterations in original) (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124, 132 (2001)). "[B]ecause arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear and mutual understanding of the ramifications of that assent.'" Ibid. (alteration in original) (quoting Atalese, 219 N.J. at 442-43 (quoting NAACP of Camden Cty. E. v. Foulke Mgmt., 421 N.J. Super. 404, 425 (2011))).

Here, the idiosyncratic facts of this case overwhelmingly support the judge's conclusion that there was no meeting of the minds between Charmaine and Maureen on the one side, and Aristacare on the other. As noted above, Charmaine had no legal authority to bind Maureen to anything set forth in the agreement because she did not hold Maureen's power of attorney. While Maureen's signature was later added to the form on an unspecified date, Aristacare provided no details concerning how that was accomplished. Aristacare did not give a copy of the agreement to Charmaine or her mother, and does not assert that it explained the forms to either of them. Aristacare also did

10

not advise Charmaine that she could consult with an attorney before signing the documents.

Contrary to the requirements of Atalese, the arbitration provision is written in a way that would not lead to a nursing home patient obtaining a "clear and mutual understanding of the ramifications of" agreeing to it. Atalese, 219 N.J. at 442-43. The dense and meandering first sentence is simply too lengthy to ensure comprehension, especially in the absence of any assistance from the facility. Aristacare directed Charmaine to sign the forms where indicated even though she was emotionally distraught by her mother's condition. Although we do not know when Aristacare obtained Maureen's signature, the record indicates that at the time of her admission, the facility's nursing staff was aware that Maureen was heavily medicated, suffering hallucinations, and unaware she was in a nursing home.

It is also well established that when the arbitration forum the parties select in the arbitration agreement is not available at the time the contract is formed, there is no meeting of the minds. Kleine, 445 N.J. Super. at 552-53; see also Flanzman, 456 N.J. Super. at 617 (holding there was no meeting of the minds because a forum was not included in the arbitration agreement, thus arbitration could not be compelled). Aristacare's arbitration provision stated that any

arbitration would be conducted according to the rules of the AAA. However, that was not possible because the AAA ceased conducting nursing home arbitrations in 2003 and has no rules governing these matters. Thus, Charmaine and her mother would not have been able to ascertain what rules might apply even if they had been able to understand they were giving up their right to pursue any future claims in court.

Under these circumstances, we conclude there was never a meeting of the minds between the parties and, therefore, the judge properly denied Aristacare's motion to dismiss the estate's complaint.[4]

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] As a result of our determination, we need not reach the estate's contention that the judge properly found that by waiting two years after receiving notice of the estate's potential claims to invoke the arbitration provision, Aristacare waived its right to seek dismissal of the estate's complaint. However, we note that the parties' sharply conflicting interpretations of the one-year limitations period set forth in the provision supports our conclusion that there was no meeting of the minds between the parties as to this, or any other, provision of the agreement.

A-3640-18T3