**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0519-20

NANCY SILVERA, by her
power of attorney, MAGGIE
TURNER,

     Plaintiff-Respondent,

v.

ARISTACARE AT CHERRY
HILL, LLC, ARISTACARE AT
CHERRY HILL, LLC, d/b/a
ARISTACARE AT CHERRY
HILL, SHARON SCHWARZKOPF,
individually, and as agent, servant,
employee, licensee, owner, officer,
administrator and/or member of the
governing body of ARISTACARE
AT CHERRY HILL, LLC, d/b/a
ARISTACARE AT CHERRY HILL,
ARISTACARE HEALTH
SERVICES, individually and as agent,
servant, employee, licensee, owner,
officer, member of the governing
body and/or the corporation or other
legal entity involved with the care
provided and/or assisted in the
management and/or operation and/or
ownership of ARISTACARE AT
CHERRY HILL, LLC, d/b/a

ARISTACARE AT CHERRY HILL,
ARISTACARE, LLC, individually
and as agent, servant, employee,
licensee, owner, officer, member of
the governing body and/or the
corporation or other legal entity
involved with the care provided
and/or assisted in the management
and/or operation and/or ownership of
ARISTACARE AT CHERRY HILL,
LLC, d/b/a ARISTACARE AT
CHERRY HILL,

     Defendants-Appellants.
_____

Argued March 15, 2021 – Decided March 30, 2021

Before Judges Fasciale and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-4030-19.

Charles M. Scheuerman argued the cause for appellants (Marks O'Neill O'Brien Doherty & Kelly, attorneys; Frances Wang Deveney, of counsel; Daniel L. Krisch, on the briefs).

Stephanie V. Shreibman argued the cause for respondent (Dansky Katz Ringold & York, PC, attorneys; Stephanie V. Shreibman, on the brief).

PER CURIAM

Defendants appeal from a September 25, 2020 order denying their motion to dismiss plaintiff's complaint and compel arbitration. We conclude the judge

2

erred by finding the arbitration agreement invalid for lack of mutual assent. We therefore reverse and remand.

Nancy Silvera was a resident in defendant AristaCare at Cherry Hill LLC's (AristaCare) nursing home facility from April 6, 2015 through April 22, 2018. Prior to her admission, AristaCare required that Nancy enter into a Long-Term Admission Agreement (the admission agreement). Nancy's daughter and power of attorney, Maggie Turner (plaintiff), completed and signed the agreement with defendants. The admission agreement contains an arbitration agreement located directly above the signature line, which reads as follows:

> EXCEPT FOR THE FACILITY'S EFFORTS TO COLLECT MONIES DUE FROM RESIDENT AND FACILITY'S OPTION TO DISCHARGE RESIDENT FOR SUCH FAILURE, WHICH THE PARTIES AGREE MAY BE HEARD BY A COURT OF [COMPETENT] JURISDICTION IN THE CITY OR COUNTY WHERE THE FACILITY IS LOCATED ANY DISPUTE BETWEEN US SHALL BE DECIDED EXCLUSIVELY BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT A PARTY WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION. Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between the resident and the Facility or its employees, agents,

3

successors or assigns, and related or affiliated parties if any, which arise out of or relates to this agreement or any related or resulting agreement, transaction or relationship (including any such relationship with parties who do not sign this agreement) shall be solved by arbitration and not by court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis, and not as a class action, and according to the rules of the American Arbitration Association [AAA].[1]

On October 8, 2019, plaintiff filed a nursing home malpractice lawsuit against AristaCare after Nancy fell from her bed while being changed by a nurse. Plaintiff amended her complaint on November 11, 2019. Thereafter, defendant filed an answer, asserting the following affirmative defense: "[t]his court lacks jurisdiction due to the existence of a binding arbitration agreement, . . . and [a]nswering [d]efendants reserve the right to move to compel arbitration and dismiss this case." On August 28, 2020, nine months after plaintiff filed her amended complaint, defendants filed their motion to dismiss plaintiff's complaint and compel arbitration. The judge conducted oral argument, rendered an oral decision, and entered the order under review.

---

[1] We note that the AAA ceased arbitrating nursing home disputes in 2003. The AAA rules therefore cannot apply here. The inapplicability of AAA is not fatal to the agreement. See Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 135 (2020) (indicating that the NJAA, which automatically applies, can be utilized to fill in the missing information as to the arbitration process).

A-0519-20

On appeal, defendants raise the following points for this court's consideration:

POINT I

THE [JUDGE] ERRED IN DETERMING THE VALIDITY OF THE ARBITRATION AGREEMENT, AS THE DECISION WAS FOR THE ARBITRATOR PURSUANT TO THE DELEGATION CLAUSE IN THE ARBITRATION AGREEMENT.

POINT II

ASSUMING THE [JUDGE] DID NOT ERR IN DETERMINGING THE VALIDITY OF THE ARBITRATION AGREEMENT, THE ARBITRATION AGREEMENT WAS NONETHELESS VALID AND ENFORCEABLE UNDER THE FEDERAL ARBITRATION ACT [FAA].

I.

We reject defendant's contention that the delegation clause, which directed that questions of arbitrability be resolved by an arbitrator, precluded the judge from ruling on validity of the arbitration agreement itself.[2]

---

[2] On this record, the parties only dispute the judge's decision to rule on the validity of the arbitration agreement, namely whether there was mutual assent. The parties cite case law dealing with the judge's authority to rule on questions of arbitrability, which is a separate and distinct interpretational issue as to whether the claim in dispute is one that is arbitrable under the agreement. The judge did not make findings about the validity and/or applicability of delegation

We apply a de novo standard of review when determining the enforceability of contracts, including arbitration agreements.  Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)).  The enforceability of arbitration agreements is a question of law, to which we need not give deference to the trial judge's interpretative analysis.  Morgan v. Sandford Brown Inst., 225 N.J. 289, 303 (2016) (citing Atalese v. U.S. Legal Servs. Grp. L.P., 219 N.J. 430, 445-46 (2014)).

It is well-settled that nursing home arbitration agreements are governed by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, which "overrides all state policies and concerns, including the Nursing Home Act's express prohibition against the enforcement of such agreements, N.J.S.A. 30:13-8.1."  Kleine v. Emeritus at Emerson, 445 N.J. Super. 545, 547 (App. Div. 2016)

---

clause as it relates to questions of arbitrability.  If the parties seek to raise whether the delegation clause "clear and unmistakably" evidences the parties' intention to delegate questions of arbitrability under Henry Schein, Inc. v. Archer & White Sales, Inc., ___ U.S. ___, ___, 139 S. Ct. 524, 530 (2019), and/or whether the tort claim at issue is arbitrable under the agreement, they may develop a record and do so on remand.  At this juncture, and on this record, we will only address the parties' arguments as to the judge's determination on mutual assent.

(citing Marmet Health Care Ctr., Inc. v. Brown, 565 U.S. 530, 533 (2012)). This court has articulated that

> [d]espite its broad interpretation of the FAA and its supremacy over specific state policies and practices, the Supreme Court has recognized the fundamental principle that arbitration is a matter of contract, thereby permitting application of state contract law to ascertain whether the parties had a meeting of the minds when contracting, and whether a party, who has ostensibly agreed to waive the right to trial by jury, has clearly and unambiguously consented to arbitration[.]
>
> [Id. at 448 (internal citations and quotation marks omitted).]

A delegation clause "can provide that an arbitrator, rather than a judge, will decide such 'threshold issues' as whether the parties agreed to arbitrate a legal claim brought by a plaintiff." Morgan, 225 N.J. at 303 (citing Rent-A-Center W., Inc. v. Jackson, 561 U.S. 63, 68 (2010)). The parties may delegate threshold arbitrability questions to the arbitrator, so long as their arbitration agreement does so by "clear and unmistakable" evidence. Schein, 139 S. Ct. at 530 (citing First Options, 514 U.S. at 944); see Rent-A-Center, 561 U.S. 63, 69 n. 1 (2010). However, "before referring a dispute to an arbitrator" to resolve disputes as to arbitrability, the [judge first] determines whether a valid arbitration agreement exists." Schein, 139 S. Ct. at 530 (citing 9 U. S. C. § 2); see Martindale v. Sandvik, Inc., 173 N.J. 76, 83 (2002) (explaining that "the first

7

step in considering [a] plaintiff's challenge to enforcement of an arbitration requirement must be to determine whether a valid agreement exists").

Section 4 of the FAA provides that a judge must compel arbitration upon being satisfied that the "making of the agreement is not in issue" and affirmatively requires a judge to decide questions about the formation or existence of an arbitration agreement, namely the element of mutual assent. Indeed, the Third Circuit recently expounded on this threshold requirement in MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds, 974 F.3d 386 (3d. Cir. 2020). Relying on Sandvik AB v. Advent Int'l Corp., 220 F.3d 104, 108-09 (3d Cir. 2010), and 9 U.S.C. § 4, the court held that "[judges] retain the primary power to decide questions of whether the parties mutually assented to a contract containing or incorporating a delegation provision." MXM, 974 F.3d at 402. The court emphasized that "the text of Section 4 of the FAA—mandating that the court be 'satisfied' that an arbitration agreement exists—tilts the scale in favor of a judicial forum where a party rightfully resists arbitration on grounds that it never agreed to arbitrate at all." Ibid.

Only after a judge makes a threshold determination that the agreement is valid, or when formation is not otherwise in dispute, may the judge look to whether there is "clear and unmistakable" evidence that the parties' intended to

delegate arbitrability questions to the arbitrator. Schein, 139 S. Ct. at 528-29. If such evidence exists, a judge may not override the contract, even if the judge thinks that the argument that the arbitration agreement applies is "wholly groundless," and must refer the matter to the arbitrator. Ibid. Guided by this framework, the judge properly made a threshold validity determination.

## II.

We next address defendants' contention that, even if the judge did not err in determining the validity of the arbitration agreement, she erred in finding that the agreement was invalid and enforceable under Atalese.

In accordance with the FAA "[judges] must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." Flanzman, 244 N.J. at 132 (alteration in original) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)). Moreover, any written agreement to submit to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see Martindale, 173 N.J. at 84-85. As detailed above, we apply state contract law to ascertain whether the parties had a meeting of the minds when contracting and whether a party has clearly and unambiguously consented to arbitration. Atalese, 219 N.J. at 442.

A-0519-20

"An agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law." Ibid. (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt., 421 N.J. Super. 404, 424 (App. Div. 2011)). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed," or, in other words, a "meeting of the minds." Ibid. (quoting Morton v. 4 Orchard Land Trust, 180 N.J. 118, 120 (2004)). When analyzing the validity of an arbitration agreement, there are "no prescribed set of words [that] must be included . . . to accomplish a waiver of rights." Id. at 447. The Court emphasized that

> when a contract contains a waiver of rights—whether in an arbitration or other clause—the waiver must be clearly and unmistakably established. Thus, a clause depriving a citizen of access to the courts should clearly state its purpose. We have repeatedly stated that the point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue.
>
> [Id. at 444 (citations and internal quotation marks omitted).]

Plaintiff signed the contract on behalf of Nancy as her power of attorney. As part of the admissions agreement, plaintiff agreed to resolve any disputes with AristaCare and any of its agents by way of arbitration. Applying Atalese, the judge determined that the agreement was invalid and unenforceable for lack

10

of mutual assent. The judge emphasized that the arbitration agreement did not clearly reference its purpose and did not properly stand out. The judge specified, "[i]t's got to stand out. It can't be on [p]age [nine] of a [ten] page agreement at the bottom in the same lettering as every other paragraph or the font size of every other paragraph. And, then, the first thing it tells [plaintiff] in the arbitration clause is the exception that [defendants] get . . . to sue in court[.]"

The admissions agreement is twenty pages long. The arbitration agreement appears on page nine at the end of the first major section of the agreement. The section is titled "Arbitration," the font is bold, and half of the paragraph is in capital letters. Plaintiff signature appears on the line immediately below the agreement. The agreement clearly states its purpose, specifies that arbitration is the exclusive forum to resolve disputes, save for collections claims, and unambiguously states that plaintiff is giving up her right to a jury trial. While it does exempt one type of claim from arbitration (collection disputes), it does so up front and unambiguously articulates that any other dispute "shall be decided exclusively by arbitration and not in court or by a jury trial."

Plaintiff submitted an affidavit claiming no one explained to her what she was signing and had the arbitration clause been "thoroughly . . . explained to

A-0519-20

[her]" she would have refused to sign. Defendants point out that plaintiff's affidavit is self-serving and "assumes that someone at defendants' facility should have proactively explained . . . the admissions agreement to her." Plaintiff is educated and employed as a special education teacher. At the time of signing, she was not suffering from any physical or mental limitations that impacted her ability to read and comprehend the agreement, nor was there any allegation that defendants acted improperly when entering into the agreement with plaintiff. See Kernahan v. Home Warranty Adm'r of Florida, Inc., 236 N.J. 301, 321 (2019) (noting that "[a] party who enters into a contract in writing, without any fraud or imposition being practiced upon him [or her], is conclusively presumed to understand and assent to its terms and legal effect (quoting Rudbard v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992))). Defendants had no affirmative obligation to explain the document to plaintiff and plaintiff presented no evidence that she did not actually understand the terms of the agreement; she instead asserts that she would have benefited from an explanation. Her signature immediately under the relevant section demonstrates her assent to forego her right to a jury trial. Because the agreement clearly and unambiguously signals to plaintiff that, by entering into the agreement she was

surrendering her right to pursue her claims in court, the agreement satisfies the dictates of Atalese.

## III.

Finally, we reject plaintiff's contention that defendants waived their right to arbitrate the dispute by acting inconsistent with their reserved right to arbitrate the dispute.[3]

As arbitration agreements are contracts subject to the legal rules governing construction, the Court has recognized that parties may waive their right to arbitrate in certain circumstances. Cole v. Jersey City Med. Ctr., 215 N.J. 265, 276 (2013). However, "[w]aiver is never presumed[,]" and an arbitration agreement "'can only be overcome by clear and convincing evidence that the party asserting it chose to seek relief in a different forum.'" Ibid. (quoting Spaeth v. Srinivasan, 403 N.J. Super. 508, 514 (App. Div. 2008)).

In Cole, Supreme Court explained that "[a]ny assessment of whether a party to an arbitration agreement has waived that remedy must focus on the totality of the circumstances" by undertaking a fact-sensitive analysis. Id. at 280. When discerning whether a party waived an arbitration agreement, we must

---

[3] This issue was not explicitly addressed by the judge, either by way of findings of fact or conclusions of law.

"concentrate on the party's litigation conduct to determine if it is consistent with its reserved right to arbitrate the dispute." Ibid. Our analysis of this issue is guided by the following non-exhaustive list of factors:

> (1) the delay in making the arbitration request; (2) the filing of any motions, particularly dispositive motions, and their outcomes; (3) whether the delay in seeking arbitration was part of the party's litigation strategy; (4) the extent of discovery conducted; (5) whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration; (6) the proximity of the date on which the party sought arbitration to the date of trial; and (7) the resulting prejudice suffered by the other party, if any. No one factor is dispositive. A court will consider an agreement to arbitrate waived, however, if arbitration is simply asserted in the answer and no other measures are taken to preserve the affirmative defense.
>
> [Id. at 280-81.]

In Cole, the Court held that an employer waived its right to arbitrate because it had been a party to the lawsuit for twenty-one months before seeking to invoke the arbitration provision at issue, had not asserted the valid arbitration agreement as an affirmative defense in its answer, and filed a motion to compel arbitration just three days before trial. Id. at 281. Here, defendants raised the existence of the arbitration agreement as an affirmative defense in their answer and filed their motion to compel arbitration nine months after plaintiff's

amended complaint.  At this time, the parties were engaged in written discovery with a discovery end date of June 28, 2021, neither party had filed dispositive motions or conducted depositions, and no trial date had been set.  Guided by the Cole factors, and under the totality of the circumstances, defendants did not waive their right to arbitrate the dispute.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-0519-20