NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2580-17T1

MARILYN FLANZMAN,

      Plaintiff-Appellant,

v.

JENNY CRAIG, INC., LILLIAS
PIRO, individually, and DENISE
SHELLEY, individually,

      Defendants,[1]

and

JC USA, INC.,

      Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **November 13, 2018** |
| **APPELLATE DIVISION** |

Submitted September 24, 2018 – Decided  November 13, 2018

Before Judges Messano, Fasciale and Rose.

---

[1]  The court administratively dismissed the claims against defendants Lillias Piro and Denise Shelley because plaintiff did not serve them with the complaint.  The merits briefs do not mention defendant Jenny Craig, Inc., but plaintiff's brief refers to defendant "JC USA, INC." as "Jenny Craig."  Our reference to "defendant" throughout this opinion is to JC USA, INC., and by "parties," we mean plaintiff and JC USA, INC.

On appeal from Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6238-17.

Zatuchni & Associates, LLC, attorneys for appellant (David Zatuchni, on the brief).

Ogletree, Deakins, Nash, Smoak & Stewart, PC, attorneys for respondent (Sharon P. Margello and Jocelyn A. Merced, on the brief).

The opinion of the court was delivered by

FASCIALE, J.A.D.

This appeal requires us to decide whether to invalidate an arbitration agreement because the parties failed to identify any arbitration forum and any process for conducting the arbitration. In general, a forum is the mechanism – or setting – that parties use to arbitrate their dispute. They could have designated an arbitral institution (like the American Arbitration Association (AAA) or the Judicial Arbitration and Mediation Services (JAMS)), or they could have communicated a general method for selecting a different arbitration setting. The mechanism or setting for the proceeding is important because the rights associated with arbitration forums may differ depending on which forum the parties choose, or on how they define the arbitral process. Here, the agreement ignored the subject altogether.

We hold that the parties lacked a "meeting of the minds" because they did not understand the rights under the arbitration agreement that ostensibly

foreclosed plaintiff's right to a jury trial. We therefore reverse the order compelling arbitration for lack of mutual assent.

## I.

At the time of her termination, plaintiff was eighty-two years old. She had worked for defendant – a weight loss, weight management, and nutrition company – for twenty-six years. During that time, plaintiff provided weight loss counseling. Defendant gradually reduced plaintiff's full-time hours to only three hours per week. The substantial reduction in hours led to her termination.

Plaintiff filed her complaint alleging (1) age discrimination and harassment in violation of the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -49; (2) discriminatory discharge and/or constructive termination in violation of the NJLAD; and (3) aider and abettor liability under the NJLAD. Defendant then filed its motion to compel arbitration relying on the parties' arbitration agreement.

Plaintiff has no recollection of signing the document that contained the arbitration agreement, which the parties did not execute when defendant hired her. Rather, in 2011, twenty years after she was hired, defendant presented plaintiff with the document, which she signed to maintain her employment. In pertinent part, the agreement provides:

**Arbitration Agreement**

Any and all claims or controversies arising out of or relating to [plaintiff's] employment, the termination thereof, or otherwise arising between [plaintiff] and [defendant] shall, in lieu of a jury or other civil trial, be settled by final and binding arbitration. This agreement to arbitrate includes all claims whether arising in tort or contract and whether arising under statute or common law including, but not limited to, any claim of breach of contract, discrimination or harassment of any kind.

. . . [Plaintiff] will pay the then-current <u>Superior Court of California</u> filing fee towards the costs of the arbitration (<u>i.e.</u>, filing fees, administration fees, and arbitrator fees) . . . .

[(Emphasis added).]

If enforceable, plaintiff gave up her right to a jury trial by executing the agreement. That is not an issue. The agreement, however, said nothing about what forum generally replaced that right (although it confusingly referred to California court filing fees). The judge recognized this important omission when he suggested that "the choice of which arbitral body would conduct the arbitration would be turned over to the [p]laintiff." In other words, the judge – not the parties – decided who would pick the forum.

On appeal, plaintiff primarily argues that the arbitration agreement lacked mutual assent and is therefore invalid as a matter of contract law. She maintains that the parties did not reach a "meeting of the minds" as to the

rights that replaced her right to a jury trial. She also argues that the arbitration agreement is unconscionable.[2]

Appellate courts exercise de novo review of a judge's decision on the enforceability of contracts, such as an arbitration clause. Morgan v. Sanford Brown Inst., 225 N.J. 289, 302-03 (2016). Whether a contractual arbitration clause is enforceable is a legal issue; therefore, this court affords no special deference to the judge's determination of that issue. Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013).

## II.

We begin by addressing plaintiff's contention that the arbitration agreement is invalid as a matter of law. Plaintiff emphasizes that there are significant consequences to the absolute absence of any reference in the arbitration agreement as to the process for generally selecting an arbitration forum. She asserts that without that information communicated somehow in the agreement – whether it be by designating AAA, JAMS, or some other mechanism intended to replace her right to a jury trial – there exists no mutual assent.

---

[2] We need not reach the question of whether the arbitration agreement is otherwise unconscionable because we have invalidated the agreement for lack of mutual assent.

Longstanding principles of law govern our analysis. The Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1 to 16, and the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, reflect federal and state policies favoring arbitration of disputes. Roach v. BM Motoring, LLC, 228 N.J. 163, 173-74 (2017). Congress enacted the FAA "to 'reverse the longstanding judicial hostility' towards arbitration agreements and to 'place arbitration agreements upon the same footing as other contracts.'" Id. at 173 (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)).

In Atalese v. United States Legal Services Group, L.P., the New Jersey Supreme Court recognized that "[t]he FAA requires courts to 'place arbitration agreements on an equal footing with other contracts and enforce them according to their terms.'" 219 N.J. 430, 441 (2014) (quoting AT&T Mobility v. Concepcion, 563 U.S. 333, 339 (2011)). As to the application of contract law principles to arbitration agreements, the Court stated:

> [A] state cannot subject an arbitration agreement to more burdensome requirements than other contractual provisions. An arbitration clause cannot be invalidated by state-law defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.
>
> Arbitration's favored status does not mean that every arbitration clause, however phrased, will be enforceable. . . . Section 2 of the FAA permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses. Accordingly, the FAA

permits states to regulate . . . arbitration agreements under general contract principles, and a court may invalidate an arbitration clause upon such grounds as exist at law or in equity for the revocation of any contract.

[Ibid. (citations omitted).]

Indeed the Supreme Court of the United States recently proclaimed that the FAA requires that courts place arbitration agreements "on equal footing with all other contracts." Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 581 U.S. ___, 137 S. Ct. 1421, 1424 (2017).

Our courts decide "whether an agreement to arbitrate exists." N.J.S.A. 2A:23B-6(b). We recognize that such agreements are generally valid, "except upon a ground that exists at law or in equity for the revocation of a contract." N.J.S.A. 2A:23B-6(a) (emphasis added). See also Morgan, 225 N.J. at 304 (indicating that "[a]lthough the FAA expresses a national policy favoring arbitration, the law presumes that a court, not an arbitrator, decides any issue concerning arbitrability"). "[S]tate contract-law principles generally govern a determination whether a valid agreement to arbitrate exists." Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006).

New Jersey law governing the enforceability of arbitration agreements is well settled. Like any contract, the parties must reach such an agreement by mutual assent. Atalese, 219 N.J. at 442. There must be a "meeting of the

minds" for the agreement to be enforceable. Ibid. The party from whom an arbitration clause has been extracted, must "clearly and unambiguously" agree to waive his or her statutory rights. Id. at 443 (quoting Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003)). "[C]ontractual language alleged to constitute a waiver [of statutory rights] will not be read expansively." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124, 132 (2001). "[B]ecause arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" Atalese, 219 N.J. at 442-43 (emphasis added) (quoting NAACP of Camden Cty. E. v. Foulke Mgmt., 421 N.J. Super. 404, 425 (2011)).

Following basic principles of contract law, our courts have previously invalidated arbitration agreements. See, e.g., id. at 445-48 (concluding the agreement failed to clearly identify the waiver of a jury trial); Leodori, 175 N.J. at 302-07 (finding there existed no evidence that an employee consented to an arbitration provision in an employee handbook); Garfinkel, 168 N.J. at 132-36 (invalidating an arbitration agreement as ambiguous); Kleine v. Emeritus at Emerson, 445 N.J. Super. 545, 552-53 (App. Div. 2016) (reversing

for lack of mutual assent because the arbitration <u>process</u> contemplated by the clause in question was unavailable when the parties executed their contract).

<u>Kleine</u> is similar to our facts but not directly on point. In <u>Kleine</u>, although the parties designated AAA as the arbitral forum, AAA was not available when they executed the arbitration agreement. 445 N.J. Super. at 550, 552. Applying the requirement for mutual assent to the enforceability of the agreement, we stated that

> when the parties contracted, their exclusive forum for arbitration was no longer available; there being no agreement to arbitrate in any other forum, arbitration could not be compelled. In short, . . . there was no meeting of the minds as to an arbitral <u>forum</u> if AAA was not available. <u>As Atalese instructs, the party</u> from whom such a provision has been extracted <u>must be able to understand</u> – from clear and unambiguous language – <u>both the rights that have been waived and the rights that have taken their place</u>.

> [<u>Id.</u> at 552-53 (emphasis added).]

The difference between <u>Kleine</u> and our case is that, here, the parties omitted any reference whatsoever to an arbitral forum. <u>See, e.g.</u>, <u>Foulke</u>, 421 N.J. Super. at 431 (voiding an agreement for a number of reasons, including the fact that "the documents do not clearly and consistently express the nature and locale of the arbitration forum itself").

To further illustrate the parties' failure to reach a meeting of the minds, the judge determined that the "chosen forum" was California, concluding that

9

"it can be deduced [from the arbitration agreement] that California law will control the arbitration, while the arbitral forum is assumed to be California."[3] Defense counsel indicated – without any support whatsoever in the language of the agreement – "that [defendant was] flexible on permitting the arbitration proceeding to take place closer to New Jersey as long as California law is applied to the proceeding." That led the judge to unilaterally decide that plaintiff "in the interest of fairness, [would have] the choice of which 'arbitral body' would conduct the arbitration . . . ." In doing so, he re-wrote the agreement but failed to clarify its inherent ambiguity.

Our opinion should not be misread to hold that the parties' failure to identify a specific arbitrator renders the agreement unenforceable. This is not a situation where on the one hand, the parties generally addressed in some fashion the process that foreclosed plaintiff's right to a jury trial, but on the other hand, simply failed to identify a specific method for selecting an arbitrator. If that were the case, either party arguably could have filed a motion under N.J.S.A. 2A:23B-11(a), entitled "Appointment of arbitrator; conflict of interest," asking the judge to appoint the arbitrator. That statute provides:

---

[3] Even if the agreement required the law in the State of California to apply – which is not the case – the judge did not analyze whether the agreement was enforceable under that law.

If the parties to an agreement to arbitrate agree on a method for appointing an arbitrator, that method shall be followed, unless the method fails. If the parties have not agreed on a method, the agreed method fails, or an arbitrator appointed fails or is unable to act and a successor has not been appointed, the court, <u>on application</u> of a party to the arbitration proceeding, shall appoint the arbitrator. An arbitrator so appointed has all the powers of an arbitrator designated in the agreement to arbitrate or appointed pursuant to the agreed method.

[(Emphasis added).]

The plain language of this statute refers to "a method for appointing an arbitrator," not a method for appointing a "forum." In this opinion, we defined a "forum" as the mechanism – or setting – that parties utilize to arbitrate their dispute.[4] There must first be a meeting of the minds about the forum itself, and then, if the parties are unable to agree on a "method for appointing an arbitrator," then they can arguably make an application under N.J.S.A. 2A:23B-11(a). In other words, if they agree that a dispute would be arbitrated by an arbitral institution, or an arbitrator or arbitrators, then that is the agreed upon forum. And after that, if they remain unable to actually select the arbitrator – under such a hypothetical agreement – then the parties could

---

[4]  Similarly, N.J.S.A. 2A:23B-1 defines "arbitration organization" as "an association, agency, board, commission or other entity that is neutral and initiates, sponsors or administers an arbitration proceeding or is involved in the appointment of an arbitrator."

arguably apply to the court under N.J.S.A. 2A:23B-11(a) and ask the judge to do so.

Like our case, in the aftermath of <u>Atalese</u>, the panel in <u>Kleine</u> focused on the lack of mutual assent as to the arbitral <u>forum</u> – the rights that replaced the right to a jury trial – rather than the parties failing to reference a "method for appointing an arbitrator." (Emphasis added). Resort to N.J.S.A. 2A:23B-11(a) potentially comes into play only if the arbitration agreement reflects a meeting of the minds about what rights the parties gave up and what rights they received. The failure to reference in the agreement an actual method for selecting an arbitrator does not in-and-of-itself invalidate this agreement. Rather, it is the lack of meeting of the minds as to the arbitral forum.

Nevertheless, here, neither party made a N.J.S.A. 2A:23B-11(a) application to the judge. Additionally, the parties did not argue on this appeal that the judge should have appointed an arbitrator under N.J.S.A. 2A:23B-11(a). Neither party brought this statute to the Law Division's or our attention. That is not surprising because before the judge (and us) they focused primarily on their inability to define what arbitration forum or process would resolve the NJLAD dispute.

Likewise, the FAA has a similar provision to N.J.S.A. 2A:23B-11(a). 9 U.S.C. § 5 of the FAA entitled "Appointment of arbitrators or umpire" provides that:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.
>
> [(Emphasis added).]

Again, there was no 9 U.S.C. § 5 application before the judge.

As analyzed by the Third Circuit Court of Appeals, 9 U.S.C. § 5 provides "a mechanism for substituting an arbitrator when the designated arbitrator [unlike here] is unavailable." Khan v. Dell Inc., 669 F.3d 350, 354 (3d Cir. 2012). Nevertheless, when "determining the applicability of Section 5 of the FAA when an arbitrator is unavailable, courts have focused on whether the designation of the arbitrator was 'integral' to the arbitration provision or was merely an ancillary consideration." Id. at 354. "In this light, the parties

must have unambiguously expressed their intent not to arbitrate their disputes in the event that the designated arbitral forum is unavailable." Ibid. See also, Jackson v. Payday Fin., LLC, 764 F.3d 765, 779-80 (7th Cir. 2014) (stating that under the circumstances presented there, the court "cannot save the arbitral process simply by substituting an arbitrator").

In our case, it was not that the "designated" arbitral forum was "unavailable," but rather that there was no designated arbitral forum or general process selected by the parties in the first place. The parties did not reach any agreement at all. This became painstakingly evident by defendant's continued improvised negotiations during oral argument before the motion judge. The parties here failed to appreciate fully the ramifications of the supposed arbitration agreement, as required by Atalese.

We emphasize that the issue in this case is whether to invalidate an arbitration agreement because the parties failed to identify any arbitration forum and any process for conducting the arbitration. The agreement must first reflect a meeting of the minds about what rights ostensibly replaced plaintiff's right to a jury trial. If the parties had done that, but remained unable to choose a particular arbitrator, then they could have arguably petitioned the court to make such a selection.

14                                                                      A-2580-17T1

III.

We now address the important consequences of failing to identify in some fashion the process for selecting an arbitration forum, such as by otherwise designating in the contract any arbitral institution or by identifying any general method for selecting an arbitration forum. Undertaking this endeavor highlights the importance of addressing – in some fashion – the rights that replaced judicial adjudication of the underlying dispute. And as Atalese instructs, and as Kleine applied, had this been done, the parties then would fully understand both the rights that have been waived and the rights that have taken their place.

A.

Selecting an arbitral institution informs the parties, at a minimum, about that institution's general arbitration rules and procedures. Without knowing this basic information, parties to an arbitration agreement will be unfamiliar with the rights that replaced judicial adjudication. That is, the parties will not reach a "meeting of the minds."

We do not mean to imply that the parties must detail in the arbitration agreement the exact manner in which the arbitration proceeding will proceed. See, e.g., N.J.S.A. 2A:23B-15(a) (giving the arbitrator such discretion). But to understand the ramifications of a waiver of a jury trial, the parties must

15

generally address in some fashion what rights replace those that have been waived. Without limitation, the parties might generally indicate in their agreement that one or more individuals will arbitrate the case, or they could identify an arbitral institution. Doing so addresses the rights that replaced the right to judicial adjudication.

For example, AAA uses certain procedures for arbitrating employment disputes.[5] AAA adheres to due process safeguards, which at a minimum meet the standards outlined in the National Rules for the Resolution of Employment Disputes. Ordinarily, when parties select AAA, they make AAA's rules part of their arbitration agreement. Such rules address, but are not limited to, notification requirements, the initiation of the proceedings, management conferences, discovery, the location of the hearing(s), the number of arbitrators, communications with the arbitrator(s), attendance at the hearings, dispositive motions, evidence, modification of awards, applications to court, fees, expenses, and costs. Picking AAA, for example, helps the parties reach a "meeting of the minds" as to the rights that replace the right to a jury trial in court.

---

[5] For an analysis of AAA's employment arbitration rules, see www.adr.org. This site identifies AAA's rules amended as of November 1, 2009, with a revised introduction as of October 1, 2017.

Similarly, JAMS provides its own set of arbitration rules and procedures applicable to its alternative dispute resolution (ADR) services, such as JAMS' employment arbitration rules and procedures.[6] We need not detail those rules here. The point is that selection of JAMS as an arbitral institution – <u>or any other ADR forum</u> – informs parties about the rights that replace those that they waived in the arbitration agreement. We are not talking about insignificant aspects of the arbitration process. The associated rights connected with the selection of an arbitral forum generally establish the substantive and procedural setting for the entire arbitration process.

Take, for example, the relevant part of the arbitration agreement reached by the parties in <u>Atalese</u>, in which they identified AAA, JAMS, and the applicable rules. The agreement stated in part:

> [T]he claim or dispute shall be submitted to binding arbitration . . . . <u>The parties shall agree on a single arbitrator</u> to resolve the dispute. <u>The matter may be arbitrated either by [JAMS] or [AAA]</u> . . . . <u>The conduct of the arbitration shall be subject to the then current rules of the arbitration service</u>.
>
> [<u>Atalese</u>, 219 N.J. at 437 (emphasis added).]

We do not mean to imply that there must be certain "talismanic words" in the agreement as to the rights that replace the right to judicial adjudication.

---

[6] <u>See</u> www.jamsadr.com.

Imposing such a requirement would upset the "equal footing" that arbitration contracts enjoy with all other contracts. But, as explained by <u>Atalese</u>, it is important that the arbitration agreement reflect a "clear mutual understanding of the ramifications" of the parties' mutual assent to waive adjudication by a court of law. <u>Id.</u> at 443. In some fashion, the agreement must communicate that.

Although not binding on us, an issue similar to the one in <u>Kleine</u> arose in another jurisdiction where the Court was unwilling to permit a judge to select – or, like here, unilaterally allow one party to do so after the fact – an arbitration forum when the one selected by the parties in their arbitration agreement became unavailable. In <u>Covenant Health & Rehabilitation of Picayune v. Moulds</u>, 14 So. 3d 695, 706 (Miss. 2009), the arbitration clause provided that the parties would arbitrate any dispute following "[AAA] and its rules and procedures." AAA then became unavailable. <u>Ibid.</u> The Mississippi Supreme Court refused to "select a <u>forum</u> not anticipated by either of the parties." <u>Id.</u> at 707 (emphasis added). Similar to <u>Kleine</u>, the Court invalidated the arbitration clause. <u>Id.</u> at 706. To do otherwise would be re-writing the arbitration agreement, as the judge did here.[7]

---

[7] We note that the parties in <u>Covenant Health</u> did not apply to the court and ask the judge to appoint a specific arbitrator, although they could have.

(continued)

A-2580-17T1

B.

The failure to identify in the arbitration agreement the general process for selecting an arbitration mechanism or setting – in the absence of a designated arbitral institution like AAA or JAMS or any other ADR setting – deprived the parties from knowing what rights replaced their right to judicial adjudication. Again, we do not impose any special language that parties must use in an arbitration agreement. Imposing such an obligation would violate Kindred Nursing, Atalese, and the other cases that preclude subjecting

---

(continued)
Rather, the Court was unwilling to select a new "forum" that had not been anticipated by the parties. As to the appointment of an arbitrator, Mississippi's Civil Practice and Procedure sections 11-15-101 to -143, applies to arbitration of controversies arising from construction contracts and related agreements:

§ 11-15-109. Method of appointing arbitrators

If an agreement or provision for arbitration provides a method for the appointment of arbitrators this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or if an arbitrator who has been appointed fails or is unable to act and his successor has not been duly appointed, the court, on application of a party to such agreement or provision, shall appoint one or more arbitrators. An arbitrator so appointed shall have the same powers as if he had been named or provided for in the agreement or provision.

[(Emphasis added).]

arbitration agreements to more burdensome requirements than other contractual agreements.

For an example of how to generally communicate this important missing information, we cite <u>Oasis Health & Rehabilitation of Yazoo City, LLC v. Smith</u>, 42 F. Supp. 3d 821 (S.D. Miss. 2014). In <u>Smith</u>, the parties picked an arbitral institution that, unbeknownst to them, was non-existent. But in their agreement, they identified a general process for selecting an arbitration forum if the institution they selected became unavailable. <u>Id.</u> at 824. In <u>Smith</u>, the parties agreed to

> participate in formal . . . Arbitration to be conducted by ADR Associates, LLC through its Dispute Resolution Process for Consumer Healthcare Disputes ("ADR Associates Rules"), which are incorporated herein b[y] reference, and as more fully set forth below. If ADR Associates, LLC is unable or unwilling to conduct the ADR process at the time of the dispute, the parties shall mutually agree upon an alternative organization that is regularly engaged in providing ADR services to conduct the . . . Arbitration. If the [p]arties cannot agree on a[n] . . . arbitrator, each party shall select one . . . arbitrator and they together shall choose a third . . . arbitrator who shall conduct the ADR Process.
>
> [<u>Ibid.</u>]

In enforcing the arbitration agreement, the court noted that the parties "explicitly contemplate[d] that the[y] . . . might not agree [on an arbitral institution] and prescribe[d] an agreed method for selection in that event . . . ."

20

Id. at 826.[8] That is, they reached a "meeting of the minds" as to what rights replaced the right to a jury trial.

Like Smith, and without requiring specific language, an arbitration agreement might generally reflect a desire for the participation of a neutral arbitrator, who would participate with a panel of arbitrators selected by the parties to the arbitration. In such an instance, the arbitration agreement might permit each party to pick an arbitrator and then those arbitrators would select the neutral arbitrator. Or the parties might agree to some other forum, so long as they enter into an arbitration agreement that in some fashion reflects a "meeting of the minds" about what rights replaced those that they gave up.

In a contract in which one gives up a right – a jury trial for example – expecting to resolve a dispute in some other forum, one must know about that other forum. Without that knowledge, they are unable to understand the ramifications of the agreement. And if after having generally identified a forum – that is they have reached mutual assent – they still remain unable to

---

[8] In Oasis Health, the plaintiff contended that if state law invalidated an agreement, because the parties' failed to select or provide a method for selecting an arbitrator or arbitrators, or because there existed a lapse in the naming of an arbitrator or arbitrators, then federal law (Section 5 of the FAA) provided the operative substantive law regarding an arbitration forum. But the court did not consider this contention because it concluded state law was not inconsistent with federal law.

appoint a specific arbitrator, then they arguably can make the appropriate application to the court for that purpose.

Reversed and remanded to the trial court for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2580-17T1