**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0423-19T3

ESTATE OF DEBORAH
WATSON, individually and
on behalf of GOOSE LANE
ENTERPRISES, LLC, and
ANTIQUES ONLY, LLC,

      Plaintiffs-Respondents,

v.

JOY PIDDINGTON,

      Defendant-Appellant.

_____

Argued telephonically May 6, 2020 –
Decided May 26, 2020

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1230-19.

Joel Wayne Garber argued the cause for appellant (Garber Law, PC, attorneys; Joel Wayne Garber, on the briefs).

Rubenstein Business Law, attorneys for respondent (David Joshua Rubenstein, on the brief).

PER CURIAM

In 1999, Deborah Watson and Joy Piddington formed two limited liability companies: Antiques Only, LLC, to facilitate their business of selling antiques, and Goose Lane Enterprises, LLC, to manage the real estate in Blackwood on which the antiques store operated. The LLCs' operating agreements called for arbitration if, among other things, there arose:

- "at any time during the existence of this [LLC] or after [its] dissolution . . ., any question, disagreement, or difference resulting from a deadlock";

- a dispute about the "meaning or interpretation of this Operating Agreement"; or

- a dispute about "the [parties'] rights, duties, or obligations."

Such differences, according to the agreements, "shall be submitted to and finally determined by arbitration by a single arbitrator in Camden County . . ., in accordance with [American Arbitration Association] rules then in force."

Deborah Watson died in July 2018, causing her interests in the companies to pass on to her estate, which commenced this action in May 2019, claiming Piddington breached her fiduciary duties, engaged in waste and mismanagement of the companies and their interests, and converted company assets. The estate

A-0423-19T3

seeks, among other things, to compel a buy-out and an accounting, as well as damages.

Piddington promptly moved to dismiss, arguing the parties were obligated to arbitrate the claims asserted in the complaint. The trial judge denied Piddington's motion. The judge relied on Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430, 442-43 (2014), in holding that the parties' arbitration provisions lacked language that would clearly and unambiguously reveal their waiver of statutory rights, including the right to pursue their claims in court. The judge also rejected Piddington's arguments that the 2014 Atalese holding should not apply to a 1999 arbitration agreement and that Atalese only applies to consumer contracts.

In appealing, Piddington argues:

> I. THE ARBITRATION PROVISION MUST BE ENFORCED BECAUSE PARTIES TO A CONTRACT MUST BE BOUND BY THE TERMS OF THEIR OWN CONTRACTS.
>
> II. NEW JERSEY LAW REQUIRES THAT AN AGREEMENT TO ARBITRATE MUST BE THE PRODUCT OF MUTUAL ASSENT FOR IT TO BE ENFORCEABLE AND SUCH ASSENT WAS PRESENT IN THE CASE SUB JUDICE.
>
> III. NEW JERSEY LAW FAVORS THE ARBITRATION OF LEGAL DISPUTES.

A-0423-19T3

IV. THE <u>ATALESE</u> DECISION SHOULD BE APPLIED PROSPECTIVELY, AND ACCORDINGLY, THE ARBITRATION PROVISION AT ISSUE HEREIN SHOULD CONTROL AND THIS MATTER SHOULD BE TRANSFERRED TO ARBITRATION.

We find insufficient merit in Piddington's arguments to warrant further discussion in a written opinion, <u>R.</u> 2:11-3(e)(1)(E), and affirm substantially for the reasons set forth in the oral opinion of Judge John C. Porto. We add only the following brief comments.

While the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 - 16, was enacted by Congress to reflect federal policies favoring the arbitration of disputes and to "reverse the longstanding judicial hostility" towards arbitration, its intention was to "place arbitration agreements upon the same footing as other contracts." <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 24-25 (1991); <u>see also</u> <u>Kindred Nursing Ctrs. Ltd. P'ship v. Clark</u>, 581 U.S. __, __, 137 S. Ct. 1421, 1424 (2017).[1] In adhering to those intentions, it is well established that state courts may determine "whether a valid agreement to arbitrate exists," <u>Hojnowski v. Vans Skate Park</u>, 187 N.J. 323, 342 (2006); <u>Flanzman v. Jenny Craig, Inc.</u>, 456 N.J. Super. 613, 621 (App. Div. 2018), and those courts are expected to

---

[1] We assume without deciding that the FAA applies to the parties' operating agreements, although the parties have not briefed or addressed that question.

A-0423-19T3

apply "ordinary state-law principles that govern the formation of contracts," First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995). In light of these principles, Judge Porto concluded the operating agreements' arbitration provisions failed to express a clear and unambiguous waiver of the right to sue. Atalese, 219 N.J. at 443; Kleine v. Emeritus at Emerson, 445 N.J. Super. 545, 550-51 (App. Div. 2016). We agree with his observations about the language of the provisions; nowhere in the agreements was there a statement that the right to sue was being waived. We agree as well that the absence of such an understanding precluded enforcement of the arbitration provisions.[2]

We also reject the argument that Atalese should be given only prospective effect. The general rule is that a change in the common law – even when a past precedent is overruled – applies retrospectively. See Fischer v. Canario, 143 N.J. 235, 243 (1996). To be sure, there are times when a new rule will be given only prospective effect depending on "what is just and consonant with the public policy considerations in the situation presented." Rutherford Educ. Ass'n v.

---

[2] In arguing that the parties should be bound to the terms of the agreements, Piddington contends that the drafting attorney asserted that he went over the agreements with both contracting parties prior to their execution. Assuming the attorney's representations should be considered – they were presented not by way of sworn statement but only in a letter – the drafting attorney nowhere stated in his letter that he advised the parties that the arbitration clauses precluded them from seeking relief in court.

A-0423-19T3

Rutherford Bd. of Educ., 99 N.J. 8, 22 (1985). In other words, "[t]he primary concern with retroactivity questions is with 'considerations of fairness and justice, related to reasonable surprise and prejudice to those affected.'" Accountemps Div. of Robert Half of Phila., Inc. v. Birch Tree Grp., Ltd., 115 N.J. 614, 628 (1989) (quoting N.J. Election Law Enf't Comm'n v. Citizens to Make Mayor-Council Gov't Work, 107 N.J. 380, 388 (1987)).

The difficulty posed in ascertaining whether new case law should be applied retroactively or prospectively – often one of the more difficult problems that face courts, see Chicot Cty. Drainage Distrib. v. Baxter State Bank, 308 U.S. 371, 374 (1940) – arises when a new decision expresses "a new rule." After careful consideration, we do not view Atalese as having taken a sharp turn from prior precedents. To the contrary, the Atalese Court unmistakably recognized not only the time-honored right to sue, but also a long line of authorities preceding the 1999 formation of the parties' agreement here that required a contractual waiver of rights to be clear and unambiguous. See Atalese, 219 N.J. at 442-45. Indeed, if we are to look to principles that would have been in the parties' contemplation or the contemplation of their counsel at the time these operating agreements were formed, certainly the Supreme Court's decision in Marchak v. Claridge Commons, Inc., 134 N.J. 275 (1993) would have strongly

suggested a need for greater clarity as to the alleged waiver of the right to sue than appears in the arbitration provisions before us now. Although we conclude that the enforceability of the arbitration provisions is to be governed by the jurisprudence existing at the time a party sought their enforcement and not the time of formation, we nevertheless conclude that <u>Atalese</u> was a logical extension of <u>Marchak</u> and other cases that followed and does not represent the type of sea change that would call into question the fairness of its application to existing contracts.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION