**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5601-18T1
                 A-5602-18T1

PREETI SHARMA and
RAJKUMAR SHARMA,
her husband,

       Plaintiffs-Appellants,

v.

SKY ZONE, LLC, SKY ZONE
FRANCHISE GROUP, LLC,
CIRCUSTRIX HOLDINGS, LLC,
UDAAN NJ, INC., d/b/a SKY ZONE
INDOOR TRAMPOLINE PARK
HAMILTON, and RPSZ
CONSTRUCTION, LLC,

       Defendants-Respondents.

_____

SAEDDA FARRAJ, a minor, by her
parents and guardians ad litem, SAEDD
FARRAJ, and SALHEAH FARRAJ,

       Plaintiffs-Appellants,

v.

SKY ZONE, LLC, SKY ZONE

FRANCHISE GROUP, LLC,
CIRCUSTRIX HOLDINGS, LLC,
UDAAN NJ, INC., d/b/a SKY ZONE
INDOOR TRAMPOLINE PARK
HAMILTON, and RPSZ
CONSTRUCTION, LLC,

    Defendants-Respondents.

_____

Argued telephonically April 22, 2020 –
Decided June 4, 2020

Before Judges Koblitz, Gooden Brown and Mawla.

On appeal from the Superior Court of New Jersey, Law
Division, Mercer County, Docket Nos. L-0930-19 and
L-0931-19.

David K. Chazen argued the cause for appellants
(Chazen & Chazen, attorneys; David K. Chazen, on the
briefs).

Samuel G. John argued the cause for respondents
(Wood Smith Henning & Berman, LLP, attorneys;
Kelly A. Waters, of counsel and on the briefs, Jill A.
Mucerino and Samuel G. John, on the brief).

PER CURIAM

In these back-to-back appeals, which we consolidate for purposes of

issuing a single opinion, Preeti Sharma and her husband, Rajkumar Sharma,

(collectively, Sharma plaintiffs), and Saedda Farraj, a minor, by her parents and

guardians ad litem, Saedd Farraj and Salheah Farraj (collectively, Farraj

plaintiffs), appeal from the July 15, 2019 Law Division order dismissing their complaints with prejudice and compelling arbitration of their disputes with defendants Sky Zone, LLC, Sky Zone Franchise Group, LLC, Circustrix Holdings, LLC, Udaan NJ, Inc., D/B/A Sky Zone Indoor Trampoline Park Hamilton, and RPSZ Construction, LLC (collectively, Sky Zone).[1] We affirm the order compelling arbitration.

We glean these facts from the allegations contained in the complaints. Sky Zone is an "indoor trampoline park" located in Hamilton Township. Sky Zone is a self-proclaimed "fun fitness" recreational facility designed for "workouts," which include "bouncing, flipping, and landing in a pit filled with 10,000 foam cubes." On June 30 and December 30, 2018, respectively, Saedda,[2] age fifteen, and Preeti, age forty-one, "purchased admission" to Sky Zone and "executed the Sky Zone Agreement" which "permitted [them] to use the trampoline and other facilities and participate in the activities promoted by . . . [d]efendants." While using Sky Zone's facility, Saedda "sustain[ed] an injury to

---

[1] Defendants allegedly "designed, constructed, franchised, owned, controlled, maintained, operated, managed, trained, supervised, marketed, and solicited business" for Sky Zone "by advertising its attractions, activities[,] and events throughout . . . New Jersey and elsewhere."

[2] We use first names in this opinion for clarity and ease of reference and intend no disrespect.

the right knee requiring surgery with ACL reconstruction with autograft hamstrings," and Preeti "sustain[ed] . . . displaced fractures of her left foot requiring surgery with open reduction and internal fixation."

Thereafter, the Sharma plaintiffs and the Farraj plaintiffs separately filed complaints alleging they sustained "serious and permanent personal injuries" as a result of defendants' "negligence, recklessness, gross negligence, wanton . . . and intentional conduct" in the design and operation of Sky Zone. Plaintiffs also alleged "[d]efendants' misrepresentations in the Sky Zone Agreement" constituted "an unconscionable commercial practice, fraud, false pretense and deception in violation of the New Jersey Truth-In-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 and N.J.S.A. 56:12-15." On June 18, 2019, defendants moved to dismiss the complaints with prejudice and compel arbitration. With defendants' consent, the motion judge granted plaintiffs' request to consolidate the matters for purposes of the motion only.

To support its motion to compel arbitration, defendants relied on the Sky Zone Agreement, which is a participant agreement, release and assumption of risks standardized form signed by all patrons, including plaintiffs, to gain admission to Sky Zone. The agreement includes a "voluntary assumption of risk acknowledgement" provision, acknowledging that patrons "are participating

voluntarily [and] at [their] own risk," and that they could "die or become paralyzed, partially or fully, through their use of the Sky Zone facility and participation in Sky Zone activities." The agreement also includes a "release of liability" provision, stating that patrons "forever, irrevocably and unconditionally release, waive, relinquish, discharge from liability and covenant not to sue [Sky Zone]" for

> any and all claims . . . of whatever kind or nature, in law, equity or otherwise, . . . related to or arising, directly or indirectly, from [their] access to and/or use of the Sky Zone [f]acility, . . . including, without limitation, any claim for negligence, failure to warn or other omission, . . . personal injury, . . . [or] bodily harm . . . .

Finally, the agreement includes an "arbitration of disputes" provision, which plaintiffs acknowledged with a check mark, indicating they understood that they were "waiving [their] right, and the right(s) of . . . minor child(ren) . . . to maintain a lawsuit against [Sky Zone] . . . for any and all claims covered by th[e a]greement." Further,

> [b]y agreeing to arbitrate, [plaintiffs] understand that [they] will not have the right to have [their] claim[s] determined by a jury . . . . Reciprocally, [defendants] . . . waive their right to maintain a lawsuit against [plaintiffs] . . . for any and all claims covered by th[e a]greement, and they will not have the right to have . . . claim(s) determined by a jury. ANY DISPUTE, CLAIM OR CONTROVERSY ARISING OUT OF OR

5

RELATING TO [PLAINTIFFS'] . . . ACCESS TO AND/OR USE OF THE SKY ZONE PREMISES AND/OR ITS EQUIPMENT, INCLUDING THE DETERMINATION OF THE SCOPE OR APPLICABILITY OF TH[E] AGREEMENT TO ARBITRATE, SHALL BE BROUGHT WITHIN ONE YEAR OF ITS ACCRUAL (i.e., the date of the alleged injury) FOR AN ADULT AND WITHIN THE APPLICABLE STATUTE OF LIMITATIONS FOR A MINOR AND BE DETERMINED BY ARBITRATION IN THE COUNTY OF THE SKY ZONE FACILITY . . . BEFORE ONE ARBITRATOR. THE ARBITRATION SHALL BE ADMINISTERED BY [JUDICIAL ARBITRATION AND MEDIATION SERVICES (JAMS)] PURSUANT TO ITS RULE 16.1 EXPEDITED ARBITRATION RULES AND PROCEDURES. JUDGMENT ON THE AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THIS CLAUSE SHALL NOT PRECLUDE PARTIES FROM SEEKING PROVISIONAL REMEDIES IN AID OF ARBITRATION FROM A COURT OF APPROPRIATE JURISDICTION.[3] This [a]greement shall be governed by, construed and interpreted in accordance with the laws of . . . New Jersey, without regard to choice of law principles. Notwithstanding the provision with respect to the applicable substantive law, any arbitration conducted pursuant to the terms of this [a]greement shall be governed by the Federal Arbitration Act (9 U.S.C., Sec. 1-16).

Additionally, the agreement contains a severability clause, providing

This [a]greement constitutes and contains the entire agreement between [Sky Zone] and [plaintiffs'] . . . use of the Sky Zone [f]acility. There are no other

---

[3] The capitalized text of the agreement also appeared in bold print.

agreements, oral, written, or implied, with respect to such matters. . . . If any term or provision of th[e agreement] shall be held illegal, unenforceable, or in conflict with any law governing th[e agreement] the validity of the remaining portions shall not be affected thereby.

The agreement refers plaintiffs to a website to review "the JAMS Arbitration Rules to which [plaintiffs] agree[d]."

JAMS is "an independent alternative dispute resolution (ADR) and third-party neutral services provider," consisting of "lawyers and retired judges who serve as mediators or arbitrators (third-party neutrals)." On May 1, 2017, prior to plaintiffs' execution of Sky Zone's agreement, in response to an inquiry by JAMS's attorney, the New Jersey Advisory Committee on Professional Ethics, Committee on the Unauthorized Practice of Law, and Committee on Attorney Advertising determined that JAMS's operating procedure was not compliant with New Jersey law because, as "third-party neutrals," JAMS's "lawyers and retired judges . . . are providing legal services" and are therefore required to "abide by the pertinent Court Rules and Rules of Professional Conduct."

During oral argument on the motion, referring to the May 1, 2017 advisory opinion, the parties agreed there was "no dispute" that JAMS was not "licensed to operate in New Jersey." Thus, defendants posited that "the main issue" was whether JAMS's unavailability "vitiate[d] the entire agreement to arbitrate."

Arguing that it did not, defendants urged the court to compel arbitration because the agreement did not specify that JAMS was the "exclusive[]" forum for arbitration, the provision requiring arbitration was "in a separate sentence" from the provision selecting "JAMS as a forum for arbitration," and there was "a severability clause" that allowed "the remaining portions" of the agreement to remain unaffected "if any part of" the agreement was deemed "unenforceable." Defendants asserted that "under the case law, . . . if the arbitration forum is not available, the [c]ourt can appoint an arbitrator."

Plaintiffs countered that Kleine v. Emeritus at Emerson, 445 N.J. Super. 545, 552 (App. Div. 2016) controlled and mandated invalidating the entire arbitration provision. As in Kleine, where the order compelling arbitration was reversed because the exclusive arbitral forum was unavailable, plaintiffs asserted that given JAMS's unavailability, "[t]here was no meeting of the minds here" and "therefore the provision is void." Additionally, plaintiffs argued that "[t]he arbitration provision itself . . . is unconscionable," and the "expedited procedures" under the JAMS rules are unduly restrictive and unfair. Defendants responded that plaintiffs' tangential claims regarding "the JAMS rules allegedly being . . . improper, or the contract as a whole being void" are "questions under the case law [that] have to be resolved by the arbitrator."

In an oral decision, the judge granted defendants' motion. Acknowledging that "[t]he key issue" was "whether plaintiff[s] entered into a valid mutual agreement to arbitrate any personal injury claims," the motion judge painstakingly scrutinized the agreement, underscoring plaintiffs' assent indicated by "placing a checkmark next to the . . . arbitration" provision, and defendants highlighting portions of the arbitration provision by reciting them "in bold print and caps." Applying the applicable legal principles, the judge determined

> that the arbitration provision satisfies the rigorous tests set forth in the leading New Jersey precedent. . . . [H]ere, plaintiff[s] checked a marked box directly next to the arbitration provision of the agreement. Further, the language in the arbitration provision is clear and unambiguous to the extent that it indicates that it subjects the parties to arbitration and release of any rights to a trial by jury.
>
> The language, though not perfect, provides and indicates clear evidence of mutual assent of the terms.

Turning to plaintiffs' argument that the agreement was unenforceable because of the unavailability of JAMS, relying on the reasoning in Khan v. Dell Inc., 669 F.3d 350 (3d Cir. 2012), the judge found there was no unambiguous expression of intent not to arbitrate in the event that the designated arbitral forum was unavailable. Thus, according to the judge, under the Federal

9

Arbitration Act (FAA), 9 U.S.C. § 5, and the New Jersey Arbitration Act, N.J.S.A. 2A:23B-11, the court was required to appoint a substitute arbitrator upon the application of a party. To support this conclusion, the judge pointed to the severability provision in the agreement as well as the provision authorizing the parties to "seek provisional remedies" in aid of arbitration from the court, which the judge interpreted as "including the appointment of an arbitrator." Accordingly, the judge offered the parties an opportunity to jointly select an arbitrator, otherwise, the court would make the selection. Additionally, the judge determined that plaintiffs' remaining arguments regarding unconscionability and the contract's validity "must be determined by the arbitrator" under Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006). The judge entered a memorializing order and this appeal followed.

On appeal, plaintiffs argue that "[w]ithout a valid dispute resolution forum in place, the arbitration provision [was] rendered void and unenforceable." Plaintiffs contend that "[t]he decisions in Kleine and Flanzman[4] are controlling," where this court "refused to compel arbitration because the agreement did not specify the forum where the arbitration would be conducted

---

[4] Flanzman v. Jenny Craig, Inc., 456 N.J. Super. 613 (App. Div. 2018), certif. granted, 237 N.J. 310 (2019).

or, alternatively, describe a process for selecting a forum." Plaintiffs assert the judge "erred in applying Khan" because "JAMS was unavailable at the time the agreement was executed and through the time the trial court ruled on . . . [d]efendants' [m]otion," thus "there was 'no meeting[] of the minds as to an arbitral forum.'"

We review orders compelling arbitration "de novo." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). Therefore, "we need not give deference to the analysis by the trial court." Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019) (citing Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016)). "In reviewing such orders, we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch, 215 N.J. at 186. "However, the preference for arbitration 'is not without limits.'" Id. at 187 (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001)).

To determine "whether a valid agreement to arbitrate exists," a "court must first apply 'state contract-law principles.'" Ibid. (quoting Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006)). In that regard, "[a]n agreement to arbitrate 'must be the product of mutual assent, as determined under customary principles of contract law.'" Barr v. Bishop Rosen & Co., Inc., 442 N.J. Super.

599, 605-06 (App. Div. 2015) (quoting Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014)). "Mutual assent requires that the parties understand the terms of their agreement." Id. at 606.

Essentially, "[t]he key . . . is clarity; the parties must know at the time of formation that 'there is a distinction between resolving a dispute in arbitration and in a judicial forum.'" Id. at 607 (quoting Atalese, 219 N.J. at 445). "An arbitration agreement that fails to 'clearly and unambiguously signal' to parties that they are surrendering their right to pursue a judicial remedy renders such an agreement unenforceable." Id. at 606 (quoting Atalese, 219 N.J. at 444). Even if an agreement contains unconscionable or otherwise unenforceable provisions, a valid arbitration clause in a contract is severable and enforceable on its own. Buckeye, 546 U.S. at 445; Delta Funding Corp. v. Harris, 189 N.J. 28, 46 (2006).

In Kleine, the plaintiff filed a personal injury action against the operator of a nursing facility "that moved to compel arbitration of [the] plaintiff's claims based on a clause contained in plaintiff's admission agreement." 445 N.J. Super. at 547. We reversed the order compelling arbitration because

> when the parties contracted, their exclusive forum for arbitration was no longer available; there being no agreement to arbitrate in any other forum, arbitration could not be compelled. In short, even assuming the clause was otherwise enforceable and consented to by plaintiff, there was no meeting of the minds as to an

12

arbitral forum if [the exclusive forum] was not available. As <u>Atalese</u> instructs, the party from whom such a provision has been extracted must be able to understand—from clear and unambiguous language—both the rights that have been waived and the rights that have taken their place. Because [the exclusive forum] was not available to administer the arbitration of this dispute at the time the contract was formed, or even at the time the trial court ruled on the application, the judge mistakenly compelled arbitration of plaintiff's personal injury claims against th[e] defendant.

[<u>Id.</u> at 552-53 (citation and footnotes omitted).]

Similarly, in <u>Flanzman</u>, we reversed the order compelling arbitration of the eighty-two-year-old plaintiff's discrimination complaint against her employer "because the parties failed to identify any arbitration forum and any process for conducting the arbitration." 456 N.J. Super. at 617. We explained that "[t]he mechanism or setting for the proceeding is important because the rights associated with arbitration forums may differ depending on which forum the parties choose, or on how they define the arbitral process." <u>Ibid.</u> By ignoring "the subject altogether," we held that "the parties lacked a 'meeting of the minds' because they did not understand the rights under the arbitration agreement that ostensibly foreclosed plaintiff's right to a jury trial." <u>Ibid.</u>

While we acknowledged that the facts in <u>Kleine</u> were similar, we noted that the difference was that in <u>Kleine</u>, the parties had in fact designated an

13

arbitral forum, albeit an unavailable one. <u>Flanzman</u>, 456 N.J. Super. at 622. We

emphasized that

> [o]ur opinion should not be misread to hold that the parties' failure to identify a specific arbitrator renders the agreement unenforceable. This is not a situation where on the one hand, the parties generally addressed in some fashion the process that foreclosed plaintiff's right to a jury trial, but on the other hand, simply failed to identify a specific method for selecting an arbitrator. If that were the case, either party arguably could have filed a motion under N.J.S.A. 2A:23B-11(a)[5] . . . asking the judge to appoint the arbitrator.
>
> [<u>Id.</u> at 623.]

We pointed out that 9 U.S.C. § 5[6] of the FAA was similar to N.J.S.A.

2A:23B-11(a), and we referred to <u>Khan</u>, where the court determined that 9

---

[5] N.J.S.A. 2A:23B-11(a) provides:

> If the parties to an agreement to arbitrate agree on a method for appointing an arbitrator, that method shall be followed, unless the method fails. If the parties have not agreed on a method, the agreed method fails, or an arbitrator appointed fails or is unable to act and a successor has not been appointed, the court, on application of a party to the arbitration proceeding, shall appoint the arbitrator. An arbitrator so appointed has all the powers of an arbitrator designated in the agreement to arbitrate or appointed pursuant to the agreed method.

[6] 9 U.S.C. § 5 provides:

A-5601-18T1

U.S.C. § 5 provided "a mechanism for substituting an arbitrator when the designated arbitrator . . . is unavailable." Flanzman, 456 N.J. Super. at 625-26 (quoting Khan, 669 F.3d at 354). In Khan, the court explained that "[i]n determining the applicability of [9 U.S.C. § 5] when an arbitrator is unavailable, courts have focused on whether the designation of the arbitrator was 'integral' to the arbitration provision or was merely an ancillary consideration." 669 F.3d at 354. "In this light, the parties must have unambiguously expressed their intent not to arbitrate their disputes in the event that the designated arbitral forum is unavailable." Ibid. Otherwise, 9 U.S.C. § 5 "requires a court to address such unavailability by appointing a substitute arbitrator" and a "contrary conclusion

---

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

A-5601-18T1

is at odds with the fundamental presumption in favor of arbitration." Id. at 357. See Hirsch, 215 N.J. at 186 (reinforcing "the strong preference to enforce arbitration agreements, both at the state and federal level").

Here, the agreement designates JAMS as the arbitral forum, and JAMS Expedited Arbitration Rules as the applicable rules of procedure governing the proceedings. Thus, unlike Flanzman, an arbitral forum and a process for conducting the arbitration were in fact selected by the parties. Further, unlike Kleine, the agreement does not designate JAMS as the exclusive arbitral forum. There is no language in the agreement indicating the parties' unambiguous intent not to arbitrate the dispute if JAMS is unavailable, and no indication that the designation of the arbitrator was integral to the arbitration provision. Indeed, the agreement to arbitrate and the selection of JAMS as the arbitrator appear in separate sentences, and the severability clause prescribes that if any term or provision of the agreement is deemed unenforceable, "the validity of the remaining portions shall not be affected thereby." See Delta Funding, 189 N.J. at 46 (approving an "arbitration agreement's broad severability clause" and finding that "if an arbitrator were to interpret all of the disputed provisions in a manner that would render them unconscionable, . . . those provisions could be

severed and . . . the remainder of the arbitration agreement would be capable of enforcement").

Further, the agreement specifies that "any arbitration . . . shall be governed by the [FAA]," suggesting that in the event of JAMS's unavailability, 9 U.S.C. § 5's mechanism for appointing a replacement arbitrator when the designated arbitrator is unavailable shall apply. As we stated in Flanzman, "if after having generally identified a forum — that is they have reached mutual assent — [the parties] still remain unable to appoint a specific arbitrator, then they arguably can make the appropriate application to the court for that purpose." 456 N.J. Super. at 630. We conclude the parties here "reached a 'meeting of the minds' as to what rights replaced the right to a jury trial," id. at 629, and entered into a valid and enforceable arbitration agreement. Thus, the judge correctly compelled arbitration, and, as requested by defendants, determined that she would select an arbitrator if the parties were unable to agree on one as required under 9 U.S.C. § 5.

Plaintiffs also argue that applying "the JAMS Rule 16.1 expedited procedures" specified in the agreement "to a complex personal injury case, such as this, is unconscionable and intended to give . . . [d]efendants unfair advantage

in the dispute resolution process."[7]  Plaintiffs contend that because they "have virtually no chance of achieving justice under the expedited JAMS rules," "[d]efendants' effort, through an arbitration provision, to restrict discovery in a personal injury case, where negligence, gross negligence and wanton willful conduct are alleged, should be found to be unconscionable and unenforceable by the [c]ourt."

New Jersey law explicitly allows for contracting parties to select the arbitral forum and the type of procedure to govern the resolution of the dispute. See Perini Corp. v. Greate Bay Hotel & Casino, Inc., 129 N.J. 479, 490 (1992)

---

[7] While JAMS's procedural rules place certain limitations on discovery, there are exceptions conferring wide latitude upon the arbitrator to override the limits and allow for broader discovery as necessary.  Specifically, JAMS Rule 16.2(b) outlines the procedure for document requests and provides that such requests must (1) "be limited to documents that are directly relevant to the matters in dispute or to its outcome;" (2) "be reasonably restricted in terms of time frame, subject matter and persons or entities to which the requests pertain;" and (3) "not include broad phraseology such as 'all documents directly or indirectly related to.'"  JAMS Rule 16.2(c) also limits electronic discovery to "sources used in the ordinary course of business," but allows parties to request other electronic documents based on "a showing of compelling need."  Under JAMS Rule 16.2(d), depositions should be limited to one "per side," but the arbitrator may determine, "based on all relevant circumstances, that more depositions are warranted."  JAMS Rule 16.2(e) permits written expert reports and expert depositions "for good cause shown."  Finally, under JAMS Rule 16.2(g), discovery should not exceed "seventy-five . . . calendar days after the [p]reliminary [c]onference" or "one hundred five . . . calendar days for expert discovery (if any)."  However, "[t]hese dates may be extended by the [a]rbitrator for good cause shown."

(explaining that, in agreeing to arbitrate disputes, "[p]arties can agree to follow . . . the usual trial-type format, or they can agree to any other type of procedure to resolve the dispute"); State Farm Guar. Ins. Co. v. Hereford Ins. Co., 454 N.J. Super. 1, 6-7 (App. Div. 2018) ("Parties, of course, can contract for specific procedures to govern their arbitration" and "can incorporate into their contract by reference rules of arbitration organizations to govern their arbitration proceedings.").

Nonetheless, having determined that the arbitration provision is enforceable, plaintiffs' argument regarding the unenforceability of the agreement based on the unconscionability of JAMS's expedited procedures should be decided by the arbitrator. See Buckeye, 546 U.S. at 449 ("We reaffirm . . . that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").

However, we agree with plaintiffs that the judge erred in dismissing their complaints with prejudice in conjunction with compelling arbitration. See GMAC v. Pittella, 205 N.J. 572, 582 n.6 (2011) ("[T]he Uniform Arbitration Act only provides for stays, rather than dismissals, of actions pending arbitration." (citing N.J.S.A. 2A:23B-7(g))); Alfano v. BDO Seidman, LLP, 393

N.J. Super. 560, 577 (App. Div. 2007) ("[U]nless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted." (alteration in original) (quoting Jansen v. Salomon Smith Barney, Inc., 342 N.J. Super. 254, 257-58 (App. Div. 2001))). Therefore, we remand the matter to the trial court to enter an amended order staying the action pending arbitration.

Affirmed in part; remanded for the entry of an amended order consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION