**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3833-19
              A-3934-19
              A-3935-19

RICHARD RICHARDSON,

      Plaintiff-Respondent,

vs.

SKY ZONE, LLC, SKY ZONE
FRANCHISE GROUP, LLC,
CIRCUSTRIX HOLDINGS, LLC,
SKY NJ, LLC d/b/a SKY ZONE,

      Defendants-Appellants,

and

RPSZ CONSTRUCTION, LLC,

      Defendant,

and

FUN SPOT MANUFACTURING,
LLC, INTERNATIONAL
ASSOCIATION OF
TRAMPOLINE PARKS, INC.,
AMERICAN SOCIETY FOR
TESTING AND MATERIALS

d/b/a ASTM INTERNATIONAL,

Defendants-Respondents.

_____

RICHARD RICHARDSON,

Plaintiff-Respondent,

vs.

SKY ZONE, LLC, SKY ZONE
FRANCHISE GROUP, LLC,
CIRCUSTRIX HOLDINGS, LLC,
SKY NJ, LLC d/b/a SKY ZONE,
FUN SPOT MANUFACTURING,
LLC, INTERNATIONAL
ASSOCIATION OF TRAMPOLINE
PARKS, INC.,

Defendants-Respondents,

and

RPSZ CONSTRUCTION, LLC,

Defendant,

and

AMERICAN SOCIETY FOR
TESTING AND MATERIALS
d/b/a ASTM INTERNATIONAL,

Defendant-Appellant.

_____

RICHARD RICHARDSON,

A-3833-19

Plaintiff-Respondent,

vs.

SKY ZONE, LLC, SKY ZONE
FRANCHISE GROUP, LLC,
CIRCUSTRIX HOLDINGS, LLC,
SKY NJ, LLC d/b/a SKY ZONE,
FUN SPOT MANUFACTURING, LLC,

Defendants-Respondents,

and

RPSZ CONSTRUCTION, LLC,

Defendant,

and

INTERNATIONAL ASSOCIATION
OF TRAMPOLINE PARKS, INC.,

Defendant-Appellant,

and

AMERICAN SOCIETY FOR
TESTING AND MATERIALS
d/b/a ASTM INTERNATIONAL,

Defendant-Respondent.
_____

Submitted January 20, 2021 – Decided April 8, 2021

Before Judges Fisher, Gilson, and Gummer.

3

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1796-19.

Wood Smith Henning & Berman LLP, attorneys for appellants Sky Zone, LLC, Sky Zone Franchise Group, LLC, CircusTrix Holdings, LLC, Sky NJ, LLC in A-3833-19 (Kelly A. Waters and Carolynn A. Mulder, on the briefs).

Green, Silverstein & Groff, LLC, attorneys for appellant in American Society for Testing and Materials d/b/a ASTM International A-3934-19 and as respondent in A-3935-19 (Joseph B. Silverstein, on the briefs).

Barnaba & Marconi, LLP, and R. Wayne Pierce (The Pierce Law Firm, LLC) of the Maryland bar, admitted pro hac vice, attorneys for appellant International Association of Trampoline Parks, Inc. in A-3935-19 and as respondent in A-3934-19 (Dennis M. Marconi and R. Wayne Pierce, on the briefs).

Chazen & Chazen, LLC, attorneys for respondent Richard Richardson (David K. Chazen, on the brief).

PER CURIAM

These back-to-back appeals, which we consolidate for purposes of issuing a single opinion, involve injuries plaintiff sustained at an indoor trampoline park. Defendants Sky NJ, LLC, Sky Zone, LLC, Sky Zone Franchise Group, LLC, and CircusTrix Holdings, LLC (Sky Zone) appeal an order denying their motion to dismiss and to compel arbitration. Defendants American Society for

Testing and Materials (ASTM) and International Association of Trampoline Parks, Inc. (IATP) appeal orders denying their motions to dismiss, which were based on their status as "discovery" defendants. We reverse all three orders.

I.

Plaintiff filed a complaint, alleging he had sustained injuries at a Sky Zone "trampoline park and recreational facility." He named as defendants the Sky Zone defendants and RPSZ Construction, LLC.

Plaintiff amended the complaint, adding as defendants: Fun Spot Manufacturing, LLC; "International Association of Trampoline Parks, Inc. (Discovery Only)"; and "American Society for Testing and Materials d/b/a ASTM International (Discovery Only)." As alleged by plaintiff, ASTM issued standards for trampoline parks. As to defendant IATP, plaintiff represented in the first amended complaint that he had "name[d] [IATP] as a defendant for discovery purposes only and will dismiss this action as to [IATP] when it complies fully with all discovery demands." He made the same representation as to defendant ASTM. The only "judgment" plaintiff sought regarding ASTM and IATP was "for discovery and for such further relief as the [c]ourt deems equitable and just."

A-3833-19

Plaintiff alleged that on July 11, 2019, he went to a Sky Zone trampoline park and, like all visitors to the trampoline park, was required to sign[1] a document entitled "Participant Agreement, Release and Assumption of Risk (The Agreement) – Sky Zone Moorestown." The general release section of the agreement expressly covers the Sky Zone defendants and their owners.[2]

The agreement contains an "acknowledgement of potential injuries" provision, in which patrons agree "participating in trampoline and other activities is inherently and obviously dangerous." The agreement includes a "voluntary assumption of risk acknowledgment" provision, recognizing patrons "are participating voluntarily at [their] own risk" and could suffer "significant bodily injuries" or "die or become paralyzed, partially or fully, through their use of the Sky Zone facility and participation in Sky Zone activities."

---

[1] Although in his complaint and amended complaint, plaintiff referred to himself as "having executed" the agreement, in the certification he submitted in opposition to Sky Zone's motion to dismiss, plaintiff stated that while he was driving, his girlfriend used her mobile phone to sign the agreement on behalf of plaintiff, herself, and their three children.

[2] According to plaintiff, CircusTrix Holdings, LLC purchased Sky Zone, LLC and Sky Zone Franchise Group, LLC and "is a successor-in-interest, and/or through a franchise agreement controlled the business operations and business practices of the [d]efendant Sky NJ, LLC d/b/a Sky Zone, and/or" assumed the liabilities of the other Sky Zone defendants and RPSZ Construction, LLC.

A-3833-19

The agreement contains a "release of liability" section, which provides patrons "forever, irrevocably and unconditionally release, waive, relinquish, discharge from liability and covenant not to sue [Sky Zone]" for

> any and all claims . . . of whatever kind or nature, in law, equity or otherwise, . . . related to or arising, directly or indirectly, from [their] access to and/or use of the Sky Zone [f]acility, . . . including, without limitation, any claim for negligence, failure to warn or other omission, . . . personal injury, . . . [or] bodily harm . . . .

The agreement also has a section entitled in part "arbitration of disputes," which was acknowledged with a check mark, indicating plaintiff understood he was "waiving [his] right . . . to maintain a lawsuit against [Sky Zone] . . . for any and all claims covered by this [a]greement." This section also provides:

> By agreeing to arbitrate, I understand that I will NOT have the right to have my claim determined by a jury . . . . Reciprocally, [the Sky Zone defendants] waive their right to maintain a lawsuit against [plaintiff] . . . for any and all claims covered by this [a]greement, and they will not have the right to have their claim(s) determined by a jury. ANY DISPUTE, CLAIM OR CONTROVERSY ARISING OUT OF OR RELATING TO MY . . . ACCESS TO AND/OR USE OF THE SKY ZONE PREMISES AND/OR ITS EQUIPMENT, INCLUDING THE DETERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE, SHALL BE BROUGHT WITHIN ONE YEAR OF ITS ACCRUAL (i.e., the date of the alleged injury) FOR AN ADULT AND WITHIN THE APPLICABLE STATUTE OF

7

LIMITATIONS FOR A MINOR AND BE DETERMINED BY ARBITRATION IN THE COUNTY OF THE SKY ZONE FACILITY . . . BEFORE ONE ARBITRATOR. THE ARBITRATION SHALL BE ADMINISTERED BY [JUDICIAL ARBITRATION AND MEDIATION SERVICES (JAMS)] PURSUANT TO ITS RULE 16.1 EXPEDITED ARBITRATION RULES AND PROCEDURES. JUDGMENT ON THE AWARD MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THIS CLAUSE SHALL NOT PRECLUDE PARTIES FROM SEEKING PROVISIONAL REMEDIES IN AID OF ARBITRATION FROM A COURT OF APPROPRIATE JURISDICTION. This [a]greement shall be governed by, construed and interpreted in accordance with the laws of the State of New Jersey, without regard to choice of law principles. Notwithstanding the provision with respect to the applicable substantive law, any arbitration conducted pursuant to the terms of this [a]greement shall be governed by the Federal Arbitration Act (9 U.S.C., Sec. 1-16). I understand and acknowledge that the JAMS Arbitration Rules to which I agree are available online for my review at jamsadr.com, and include JAMS Comprehensive Arbitration Rules & Procedures; Rule 16.1 Expedited Procedures; and, Policy On Consumer Minimum Standards Of Procedural Fairness.

The capitalized text of the agreement also appears in bold print.

Plaintiff asserts JAMS was not an available arbitration forum when plaintiff executed the agreement. To support that assertion, plaintiff relies on a 2017 response of the New Jersey Advisory Committee on Professional Ethics, Committee on the Unauthorized Practice of Law, and Committee on Attorney

8

Advertising to an inquiry from JAMS's attorney about JAMS opening a New Jersey office. JAMS's attorney described JAMS as "an independent alternative dispute resolution (ADR) and third-party neutral services provider" consisting of "lawyers and retired judges who serve as mediators or arbitrators (third-party neutrals)." The committees determined that as "third-party neutrals," JAMS's lawyers and retired judges were practicing law and, therefore, were required to "abide by the pertinent <u>Court Rules</u> and <u>Rules of Professional Conduct</u>." Sky Zone does not dispute JAMS's inability to act as the arbitrator of the parties' dispute.

The agreement also contained a severability clause, in which plaintiff acknowledged "I have had sufficient opportunity to read this entire document. I have read and understood and voluntarily agree to be bound by its terms." The clause also provided:

> This [a]greement constitutes and contains the entire agreement between [Sky Zone] and [plaintiff's] . . . use of the Sky Zone Facility. There are no other agreements, oral, written, or implied, with respect to such matters. . . . If any term or provision of this [agreement] shall be held illegal, unenforceable, or in conflict with any law governing this [agreement] the validity of the remaining portions shall not be affected thereby.

Severability clauses "are indicative of the parties' intent that the agreement as a whole survives the excision of an unenforceable provision." Arafa v. Health Express Corp., 243 N.J. 147, 169 n.2 (2020).

Instead of answering the amended complaint, the Sky Zone defendants moved to dismiss and to compel arbitration based on the language of the agreement. In opposing the motion, plaintiff submitted a certification in which he asserted he would not have signed the agreement had he been "informed of the inequities and costs associated with arbitration" and that he was "waiving [his] constitutional right to have a jury decide my case." As for JAMS, plaintiff faulted Sky Zone for not providing the expedited JAMS arbitration rules to him and for not telling him that arbitration would "[c]ause me to be unable to properly prepare and prosecute my case under the JAMS expedited procedure." He did not assert he had looked at the JAMS website address provided in the agreement or otherwise reviewed any JAMS information, rules, or procedures. Nevertheless, his lawyer argued the arbitration provision was unenforceable because there was no meeting of the minds due to JAMS's unavailability.

After hearing oral argument, the motion judge denied the motion, finding the agreement was not binding on the parties because there was no meeting of the minds. The judge based that finding on his conclusions that: (1) the waiver

10

provision rendered the arbitration provision illusory; and (2) JAMS was an integral part of the agreement and was unavailable.

ASTM moved to dismiss the amended complaint, arguing it was not a proper party to the case and had not been served properly. Relying on Beckwith v. Bethlehem Steel Corp., 182 N.J. Super. 376 (Law Div. 1981), ASTM argued it had no pecuniary interest making it a proper defendant in this case and balancing the parties' burdens favored ASTM, a non-profit entity with an office in Pennsylvania and no physical presence in New Jersey, because plaintiff could obtain the discovery it sought through the "Uniform Discovery Act."[3] In opposition, plaintiff argued the "industry" had an economic interest and that ASTM had an economic interest "in maintaining the integrity of their committee process." Attempting to minimize the impact of discovery on ASTM, plaintiff's lawyer represented he was "not looking to sue ASTM as a discovery defendant in every single Sky Zone case I have." After hearing oral argument, the motion judge denied ASTM's motion. The judge seemed to acknowledge plaintiff had not established that ASTM had a financial interest in terms of potential loss of

---

[3] See Catalina Mktg. Corp. v. Hudyman, 459 N.J. Super. 613, 618 (App. Div. 2019) (rejecting assertion that New Jersey has not adopted the Uniform Interstate Depositions and Discovery Act and noting New Jersey court rules that effectively adopt and conform with provisions of that act).

11

money but indicated ASTM might "want to stand behind their standards and show that [plaintiff's] expert is incorrect." He concluded the requested information was "essential" to plaintiff's case and that ASTM could provide it "in an easy way." As for ASTM's argument that it was not properly served, the judge concluded plaintiff's counsel's affidavit of inquiry "substantially conforms."

IATP, also based in Pennsylvania and with no New Jersey office, moved to dismiss the amended complaint, arguing plaintiff had failed to establish personal or equitable jurisdiction and that it did not have a financial interest in the outcome of the case. After hearing oral argument, the judge denied IATP's motion, finding "everything [IATP does] as an organization has an impact in every state . . . where parks are promoting [IATP's] support as being emblematic of why people should go to their facilities" and that New Jersey courts have personal jurisdiction over IATP because IATP's "actions can somehow impact state residents." The court also found that equitable jurisdiction was proper because plaintiff's discovery request was necessary for him to prove his allegations and that it was "[n]ot a burden on IATP" to produce the requested discovery.

The judge issued an order denying each of the motions to dismiss. In a subsequent order, he amended the initial order "to clarify" he had denied Sky Zone's motion to dismiss and compel arbitration.

Appealing the denial of its motion to dismiss and to compel arbitration, Sky Zone asserts the agreement is enforceable because: (i) the parties clearly intended to arbitrate any dispute by arbitration notwithstanding JAMS's unavailability; and (ii) federal and state law and the agreement's language provide for a court-appointed alternate arbitrator. Sky Zone argues the motion judge also erred in finding the arbitration provision "illusory," contending the arbitration provision is "separate and distinct" from the release of liability provision, the severability clause maintains the arbitration provision's validity even if the liability of waiver provision is unenforceable, and the "interpretation and determination of the applicability and enforceability of the liability waiver" is for the arbitrator to decide.

In response, plaintiff argues the arbitration agreement is unenforceable because, among other reasons, the agreement lacked a meeting of the minds due to the unavailability of JAMS as arbitrator, which plaintiff contends was an "integral contract term." Plaintiff also argues the agreement is illusory because

13

it requires plaintiff to "waive and/or release all potential claims" while "also imposing a mandatory . . . duty" to arbitrate any dispute or claim.

Defendants ASTM and IATP appeal the denials of their motions, making the same arguments they made to the motion judge.

II.

We apply a de novo standard to the legal question whether an arbitration agreement is enforceable. Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 131 (2020); see also Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019) ("Whether a contractual arbitration provision is enforceable is a question of law, and we need not defer to the interpretative analysis of the trial . . . court[] unless we find it persuasive."). In reviewing arbitration agreements, we recognize arbitration is a "favored means of dispute resolution[,]" Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006), and "are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level," Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). See also Arafa, 243 N.J. at 170.

In determining whether a valid agreement to arbitrate exists, we apply "state contract-law principles." Hojnowski, 187 N.J. at 342; see also Kernahan, 236 N.J. at 317-18. Under those principles, "[a]n arbitration agreement is valid

only if the parties intended to arbitrate because parties are not required 'to arbitrate when they have not agreed to do so.'"  Kernahan, 236 N.J. at 317 (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)).  Thus, our first inquiry is whether the parties actually and knowingly agreed to arbitrate their dispute.  Ibid.; see also Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014).

That inquiry begins with the language of the arbitration clause.  To reflect mutual assent to arbitrate, the terms of an arbitration provision must be "sufficiently clear to place a consumer on notice that he or she is waiving a constitutional or statutory right."  Atalese, 219 N.J. at 443.  "No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Id. at 444.  If "at least in some general and sufficiently broad way" the language of the clause conveys that arbitration is a waiver of the right to bring suit in a judicial forum, the clause will be enforced.  Id. at 447.  "The key . . . is clarity." Barr v. Bishop Rosen & Co., 442 N.J. Super. 599, 607 (App. Div. 2015).

The language of the arbitration clause of the parties' agreement is clear. It states plaintiff was "agreeing to arbitrate any dispute as set forth in this section" and was "waiving [his] right . . . to maintain a lawsuit."  It sets forth that "[b]y agreeing to arbitrate, [plaintiff] understand[s] that [he] will NOT have

15

the right to have [his] claim determined by a jury."  That broad language is a clear and unambiguous waiver of plaintiff's right to a jury trial and to pursue his claims in a court of law and, accordingly, is enforceable.  See Flanzman, 244 N.J. at 137-38; Atalese, 219 N.J. at 444-45; Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002).

Having determined the parties agreed to arbitrate and the agreement is enforceable, we turn to the question of whether JAMS's unavailability eviscerates that agreement.  In Flanzman, 244 N.J. at 133,[4] a case involving an arbitration agreement in which the parties did not designate a specific arbitrator or a process for the selection of an arbitrator, the Court recognized federal and state policy favoring arbitration, citing both "the federal policy expressed by Congress in the [Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16]" and our Legislature's codification of "'its endorsement of arbitration agreements'" in the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -36.  Flanzman, 244 N.J. at 133 (quoting Hojnowski, 187 N.J. at 342).  The Court found that Congress had "promoted arbitration by addressing the selection of an arbitrator" in section 5 of the FAA.  Ibid.  That section authorizes a court to designate an arbitrator "if for any other reason there shall be a lapse in the naming of an

---

[4]  Flanzman was decided after the motion judge's decision in this case.

arbitrator . . . or in filling a vacancy." 9 U.S.C. § 5. The NJAA has a similar provision, authorizing court-appointment of an arbitrator if "an arbitrator appointed fails or is unable to act . . ." N.J.S.A. 2A:23B-11(a). Given those statutory provisions and finding that "[n]o New Jersey statutory provision or prior decision has elevated the selection of an 'arbitral institution' . . . to the status of [an] essential contract term[] . . . " the Court reversed our decision invalidating the arbitration agreement. 244 N.J. at 139-41.

In so ruling, the Court distinguished our holding in <u>Kleine v. Emeritus at Emerson</u>, 445 N.J. Super. 545 (App. Div. 2016), noting that in <u>Flanzman</u> "there was no agreement to a particular arbitral organization that proved to be unavailable, and no evidence that the involvement of a specific organization was an essential term of the parties' [a]greement." 244 N.J. at 140. In <u>Kleine</u>, we held that an arbitration clause was not enforceable because the selected arbitral forum was not available and "there was no meeting of the minds as to an arbitral forum if [the selected forum] was not available." 445 N.J. Super. at 552. Unlike the arbitration clause at issue in this case, the <u>Kleine</u> arbitration clause did not reference the FAA or the NJAA, and the parties in <u>Kleine</u> did not raise or rely on the arbiter-selection provisions of section 5 of the FAA or N.J.S.A. 2A:23B-11(a), which have since been recognized by the Court in <u>Flanzman</u>.

17

The Third Circuit addressed the application of section 5 of the FAA in Khan v. Dell Inc., 669 F.3d 350, 351 (3d Cir. 2012), to an arbitration clause that designated an unavailable arbitral forum. Like the arbitration clause in this case, the Khan clause specifically referenced the FAA. Ibid. Opposing the defendant's motion to compel arbitration, the plaintiff contended that the arbitral designation was "integral" to the arbitration provision. Id. at 353. The court recognized that section 5 of the FAA "provides a mechanism for substituting an arbitrator when the designated arbitrator is unavailable." Id. at 354. The court noted that "[i]n determining the applicability of [s]ection 5 of the FAA when an arbitrator is unavailable, courts have focused on whether the designation of the arbitrator was 'integral' to the arbitration provision or was merely an ancillary consideration." Ibid. The court found that an arbitral designation is integral rather than "'an ancillary logistical concern'" when it is "'so central to the arbitration agreement that the unavailability of that arbitrator [brings] the agreement to an end.'" Ibid. (quoting Reddam v. KPMG LLP, 457 F.3d 1054, 1061 (9th Cir. 2006) (abrogated in part on other grounds by Atl. Nat'l Trust LLC v. Mt. Hawley Ins. Co., 621 F.3d 931 (9th Cir. 2010))). The court held that to demonstrate the central importance of the arbitral designation, "the parties must have unambiguously expressed their intent not to arbitrate their disputes in the

18

event that the designated arbitral forum is unavailable." Ibid. The court also held that the unavailability of the designated arbitral forum constituted a "lapse" within the meaning of section 5 of the FAA, believing "a narrower construction . . . would be inconsistent with the 'liberal federal policy in favor of arbitration' articulated in the FAA." Id. at 356-57.

Under that legal framework, we consider the parties' agreement. The arbitration clause states the agreement would be interpreted in accordance with New Jersey law and the arbitration would be governed by the FAA. The FAA and the NJAA provide for a court-appointed arbitrator if the designated arbitrator is unavailable. The arbitration clause enables the parties to seek from a court "provisional remedies in aid of arbitration." The agreement does not state the parties intended not to arbitrate their disputes if JAMS is unavailable, and nothing indicates the designation of JAMS was integral to the arbitration clause. Accordingly, we conclude the unavailability of JAMS does not render the arbitration clause unenforceable.

The arbitration clause is enforceable. In light of its terms, the other issues raised by plaintiff about the agreement, including the viability of the release-of-liability provision, is for the arbitrator, not a judge, to decide. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006) (finding "a challenge to the

validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator"); Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 211 (2019) ("delegation of authority to the arbitrator to resolve disputes relating to the enforceability of the agreement was valid").

Accordingly, we reverse the denial of Sky Zone's motion to compel arbitration and remand for entry of a new order, compelling arbitration and staying this court action. See N.J.S.A. 2A:23B-7(g) (stating "[i]f the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration"); see also 9 U.S.C. § 3 (stating a court action should be stayed if that action involves "any issue referable to arbitration"). If the parties are unable to agree on an alternate arbitrator, they may apply to the trial judge in accordance with N.J.S.A. 2A:23B-11(a) and section 5 of the FAA and ask the judge to appoint an arbitrator. All other issues shall be determined by the arbitrator in accordance with the arbitration agreement.

## III.

"When a motion to dismiss for lack of jurisdiction is made, it is only the jurisdictional allegations that are relevant, not the sufficiency of the allegations respecting the cause of action." Rippon v. Smigel, 449 N.J. Super. 344, 359-60

(App. Div. 2017). A motion to dismiss for lack of personal jurisdiction pursuant to Rule 4:6-2(b) presents questions of law and fact. Pullen v. Galloway, 461 N.J. Super. 587, 596 (App. Div. 2019). We review de novo the judge's legal conclusions and generally defer to a judge's factual findings if they are supported in the record. Ibid.

New Jersey has long followed the legal principle that a witness isn't a defendant based solely on its status as witness. See Walker v. Pa. R.R. Co., 134 N.J. Eq. 544, 549 (Ch. 1944); McCarter v. Farmers' Loan & Trust Co., 105 N.J. Eq. 322, 323 (Ch. 1929). To be made a party to a lawsuit, a person or entity must have some interest in the subject matter of the lawsuit. McCarter, 105 N.J. Eq. at 323. That interest is more than just intellectual curiosity; it is pecuniary in nature as to the outcome of the lawsuit. Beckwith, 182 N.J. Super. at 380-81; Arcell v. Ashland Chem. Co., 152 N.J. Super. 471, 507 (Law Div. 1977); cf. Davila v. Cont'l Can Co., 205 N.J. Super. 205, 207 (App. Div. 1985) (observing that "[i]n the action on appeal before us, defendant has a financial stake"). Although that general rule has exceptions, see Walker, 134 N.J. Eq. at 549-50, none of them applies here.

If a defendant does not have a pecuniary interest in the outcome of the lawsuit, a court deciding whether the lawsuit should continue against that

defendant balances the plaintiff's need for the discovery sought from that defendant and the value of the information sought as against the ease in which the information may be provided by the defendant and the availability of less burdensome means to obtain the same information. Beckwith, 182 N.J. Super. at 382. In Beckwith, the plaintiffs sought to join as a defendant for the sole purpose of obtaining discovery from an out-of-state, non-profit corporation that did not conduct business in New Jersey. Judge Keefe, then sitting as a trial judge, dismissed the complaint, finding the defendant did not have a pecuniary interest in the controversy and the plaintiffs could have sought discovery in the state where the defendant had its office. Id. at 381-85.

The record establishes that neither ASTM nor IATP has a pecuniary interest in the outcome of this lawsuit. Plaintiff does not allege in his amended complaint that either has a pecuniary interest or facts from which a reasonable inference could be drawn that they have a pecuniary interest. The trial judge's "on the fence" assumption that ASTM may sustain "some sort of loss of a fee or something by any members in the trampoline industry" is pure speculation and insufficient to sustain a finding of jurisdiction. His belief that "this information is going to have a greater financial impact on [IATP] based upon what I understand to be the interrelationship between Sky Zone and [IATP]" is

unsupported speculation premised on unsupported speculation. Plaintiff's assertion that "ASTM negligently allowed the trampoline industry to subvert its system to develop consensus standards that benefit public health and safety" is not pleaded in the amended complaint. That some defendants are members of ASTM or IATP and several years ago one defendant's CEO was the chairman of IATP does not establish that either ASTM or IATP has a pecuniary interest in the outcome of this litigation.

We hold the balancing test favors defendants. Plaintiff does not dispute that ASTM and IATP are out-of-state entities with no offices in New Jersey. The judge's finding that IATP has no burden as an out-of-state defendant in a lawsuit because "[i]t's a simple electronic transfer" is not supported legally, factually, or by the history of this litigation. Plaintiff's asserted need for discovery from ASTM and IATP and the importance of that information to the case is outweighed by the availability and ease of other means of obtaining that information. Plaintiff simply could have followed the applicable court rules. See Catalina Mktg. Corp., 459 N.J. Super. at 618; Beckwith, 182 N.J. Super. at 382-83.

Accordingly, we find that ASTM and IATP were improperly joined as "discovery" defendants and reverse the denials of ASTM's and IATP's motions

23

to dismiss.  Having resolved this aspect of the appeal, we need not reach defendants' other jurisdictional arguments.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3833-19